JOHN PRICE, Appellant, v. MELODY L. DUNN, fka MELODY L. PRICE, Respondent.

No. 19955

February 22, 1990                                    787 P.2d 785

*Leslie Mark Stovall,* Las Vegas, for Appellant.

*Shaner & Trent,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

In January 1987, respondent Melody L. Dunn (formerly known as Melody L. Price) filed a petition to terminate the parental rights of her ex-husband, appellant John Price, with regard to their daughter, Niccolo Johmel Price. The petition was accompanied by an affidavit indicating that Melody had been unable to determine John's whereabouts. Melody stated in her affidavit that she had attempted to locate John in December 1986, by calling Margaret Price, John's stepmother. Margaret advised her that John did not reside in Nevada and that approximately two years prior Margaret had been informed that he was residing in Norfolk, Virginia. Based upon Melody's affidavit, the district court ordered publication of the summons. John did not know of the publication and did not respond to the summons. After publication and a hearing, the court entered an order terminating John's parental rights on June 19, 1987.

When John learned that his parental rights had been terminated, he brought a motion in the district court on January 17, 1989, to set aside the order terminating his parental rights. John based his action on Margaret Price's affidavit of January 10, 1989, which supported John's claim that Melody did not exercise due diligence in locating his whereabouts before petitioning for an order for publication of summons. Margaret, John's stepmother, stated in her affidavit that she had received a telephone call from Melody on December 16, 1986, regarding John's whereabouts. Margaret stated that she had advised Melody that John was working in Fontana, California, as a truck driver. Margaret further stated that she had told Melody that John could be reached through his mother, Evalina Price/Bass, or his niece, Evelyn Woods, both of whom lived in Fontana, California. Margaret claimed that Melody never stated that she was attempting to

terminate John's parental rights, and that if she had, Margaret would have contacted John personally.

Melody filed a second affidavit and an opposition to John's motion. On February 1, 1989, the court denied John's motion to set aside the order terminating parental rights. On February 14, 1989, John filed a motion for reconsideration based upon a recent United States Supreme Court case. The district court refused to reconsider its former ruling.

John appealed to this court.

Both parties concede that Melody should have exercised due diligence in locating John for the trial court's judgment authorizing service by publication to be proper. However, the parties disagree on whether Melody did indeed exercise due diligence.

The exercise of due diligence in locating a party on whom service is to be made is required and explained by NRCP 4(e)(1)(i):

> (1) Service by Publication.
>
> (i) General. When the person on whom service is to be made resides out of the state, or has departed from the state, or cannot, after due diligence, be found within the state . . . and the fact shall appear, by affidavit, to the satisfaction of the court or judge thereof, and it shall appear . . . by affidavit . . . that a cause of action exists against the defendant . . . ., such court or judge may grant an order that the service be made by the publication of summons.
>
> Provided, when said affidavit is based on the fact that the party on whom service is to be made resides out of the state, and the present address of the party is unknown, it shall be a sufficient showing of such fact if the affiant shall state generally in such affidavit that at a previous time such person resided out of this state in a certain place (naming the place and stating the latest date known to affiant when such party so resided there); that such place is the last place in which such party resided to the knowledge of affiant; that such party no longer resides at such place; that *affiant does not know the present place of residence of such party or where such party can be found;* and that affiant does not know and has never been informed and has no reason to believe that such party now resides in this state; and, in such case, it shall be presumed that such party still resides and remains out of the state, and such affidavit shall be deemed to be a sufficient showing of *due diligence* to find the defendant.

(Emphasis added.)

Melody does appear to have complied with the procedural

requirements of substituted notice as outlined in NRCP 4(e)(1)(i). In her affidavit, Melody stated that she did not know John's address. She stated that she had attempted to discover John's address by examining the telephone directory and inquiring if John received service from the power company. Melody further stated that she had spoken to Margaret Price, John's stepmother, who told her that John did not live in Nevada and that two years prior she had been informed that he was residing in Norfolk, Virginia. Although Melody's affidavit technically complies with NRCP 4(e)(1)(i), her actual efforts, as a matter of law, fall short of the due diligence requirement to the extent of depriving John of his fundamental right to due process.

Where other reasonable methods exist for locating the whereabouts of a defendant, plaintiff should exercise those methods. *See* Foster v. Lewis, 78 Nev. 330, 372 P.2d 679 (1962); State v. District Court, 68 Nev. 527, 238 P.2d 1125 (1951). Here, Melody could have made additional, simple efforts to locate John. First, she could have told Margaret that she was attempting to terminate John's parental rights. Had Melody thus informed Margaret, Margaret might have been more cooperative in giving Melody information. Second, Melody could have contacted Evalina Price/Bass, John's mother, or Evelyn Woods, John's niece. Margaret stated in her affidavit that she had advised Melody that John could be contacted through these relatives. Margaret also stated that Melody knew where John's mother resided, because Melody had visited John's mother on several occasions at her Ontario, California, address, where she had resided for thirty-five years. Third, Melody could have consulted the Norfolk, Virginia, directory if she were genuinely interested in finding John's address.

We conclude that Melody's efforts, consulting the Nevada telephone directory and power company's customer list, and contacting John's stepmother, do not satisfy the due diligence test statutorily required by Nevada.

John further contends that the trial court abused its discretion by not setting aside the default judgment terminating his parental rights.

Abuse of discretion is the standard of review established to determine whether a lower court should have set aside a default judgment. Tahoe Village Realty v. DeSemet, 95 Nev. 131, 134, 590 P.2d 1158, 1161 (1979); Lentz v. Boles, 84 Nev. 197, 200, 438 P.2d 254, 257 (1968); Hotel Last Frontier Corp. v. Frontier Properties, Inc., 79 Nev. 150, 153, 380 P.2d 293, 294 (1963); Bryant v. Gibbs, 69 Nev. 167, 170, 243 P.2d 1050, 1051 (1952).

Several guidelines have been established to indicate how a court should determine whether to set aside a judgment. First, the moving party must show some excuse for its failure to answer or otherwise defend. Second, there must be a showing that a meritorious defense exists to the claim for relief. Third, the district court should recognize that the basic underlying policy is to have each case decided on its merits. Sealed Unit Parts Co. v. Alpha Gamma Ch., 99 Nev. 641, 643, 668 P.2d 288, 289 (1983).

The first guideline, that the moving party must show some excuse for setting aside the judgment, is addressed by NRCP 60(b) which provides that a court may relieve a party from a final judgment for extrinsic fraud upon a court with no time limitation.[1] "Extrinsic fraud has been held to exist when the unsuccessful party is kept away from the court by . . . such conduct as prevents a real trial upon the issues involved, or any other act or omission which procures the absence of the unsuccessful party at the trial." Colby v. Colby, 78 Nev. 150, 153-154, 369 P.2d 1019, 1021 (1962) (quoting Murphy v. Murphy, 65 Nev. 264, 271, 193 P.2d 850, 854 (1948)); *see also* Murphy v. Murphy, 103 Nev. 185, 186, 734 P.2d 738, 739 (1987).

John argues that Melody's failure to contact his mother or niece to discover his whereabouts constitutes extrinsic fraud upon the court. John offers the affidavit of Margaret Price to support his allegation. Margaret's affidavit stated that she told Melody to contact John's mother or niece, and that either one of them would know how to contact John. Margaret further stated that she told Melody that John was working in Fontana, California. If Margaret's affidavit is true, then Melody did commit fraud upon the court because she intentionally kept John away from the hearing. In addition, Melody's actions would have prevented a real trial on the issues.

The second guideline, whether the defendant has a meritorious defense, must now be abandoned pursuant to Peralta v. Heights Medical Center, Inc., 485 U.S. 80 (1988). There the United States Supreme Court stressed that "where a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' " 485 U.S. at 86-87. Here, Melody's failure to exercise due diligence in locating John

---

[1]The six-month time limitation in NRCP 60(b) which governs motions to set aside judgments does not apply to extrinsic fraud upon a court. This is important in John's case, because he moved to vacate the judgment approximately nineteen months after it was entered.

deprived John of due process; therefore, we cannot require that John later show he had a meritorious defense.

The third guideline is the one to which this court has accorded the most weight: strong policy considerations in favor of a trial on the merits.

> If there is a refusal to set aside a default, a ruinous judgment may be sustained against a party who, upon hearing, might have interposed a perfectly good defense. By sustaining the default, he would forever be debarred the right of a hearing. . . . If the plaintiff has a good case there is no necessity of appealing. If he has a bad one, this court ought not be very anxious to help him keep an advantage he has obtained, not through the justice or strength of his cause, but by the accidental blunder of his opponent.

*Hotel Last Frontier,* 79 Nev. at 156, 380 P.2d at 296. *Frontier's* sound policy in favor of greater leniency in setting aside default judgments has been cited with approval. *Lentz,* 84 Nev. at 200, 438 P.2d at 256; *Sealed Unit Parts,* 99 Nev. at 643, 668 P.2d at 288; Schulman v. Bongberg-Whitney Electric, Inc., 98 Nev. 226, 228, 645 P.2d 434, 435 (1982); Yochum v. Davis, 98 Nev. 485, 487, 653 P.2d 1215, 1217 (1982).

Resolving a case on its merits is of special importance here. Judicial policy favoring a decision on the merits heightens in domestic relations matters. Dagher v. Dagher, 103 Nev. 26, 28, 731 P.2d 1329, 1330 (1987). This court will closely question termination of parental rights. Chapman v. Chapman, 96 Nev. 290, 292, 607 P.2d 1141, 1143 (1980); Casper v. Huber, 85 Nev. 474, 477, 456 P.2d 436, 438 (1969). "Termination of parental rights is a drastic measure, which should be applied with caution." Carson v. Lowe, 76 Nev. 446, 451, 357 P.2d 591, 594 (1960). Under the circumstances of this case, terminating parental rights without a trial on the merits would be contrary to this court's objectives.

We therefore conclude that Melody's failure to exercise due diligence in locating John's whereabouts before making service upon him through publication violated the Nevada Rules of Civil Procedure as well as John's due process rights. The district court's judgment is reversed and remanded for a hearing on the merits to determine whether John's parental rights should be terminated.