DALE M. BROWNING, Appellant v.
MELVIN DIXON, Respondent.

No. 29019

February 26, 1998                    954 P.2d 741

*Eglet & Prince, LLP.,* Henderson, for Appellant.

*Albert D. Massi, Ltd.,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The principal issue raised in this appeal is whether a plaintiff must use due diligence to locate a defendant before resorting to the substitute service provisions of NRS 14.070(2). We conclude that procedural due process requires such diligence, and we

reverse the district court's order denying appellant Dale Browning's motion to set aside the default judgment entered against him.

## FACTS

Browning and respondent Melvin Dixon were involved in an automobile accident on January 20, 1995. Browning and Dixon exchanged information about their names, addresses, telephone numbers, and insurers. Browning also gave to Dixon a business card identifying his employer's name, address, and telephone number. At the time of the accident, Browning lived in an apartment complex at 5576 West Rochelle, apartment #29C, in Las Vegas. Dixon apparently concedes that the apartment number was included in the address Browning gave to him.[1] Approximately three weeks after the accident, Browning moved to a different residence in Las Vegas; Browning's employer and employment address remained the same at all relevant times. Browning asserts that he informed the post office and Department of Motor Vehicles of his new residential address shortly after his move.

Within a few weeks after the accident, Dixon presented a claim for personal injuries to Browning's automobile liability insurer. Browning's insurer denied the claim, and Dixon retained an attorney. On March 3, 1995, Dixon's attorney sent a letter of representation to Browning at 5576 West Rochelle, Las Vegas, Nevada. Beginning with this letter, and continuing until after the default was entered, Dixon omitted Browning's apartment number from the address on every piece of mail he sent to Browning. Dixon also sent a copy of the representation letter to Browning's insurer, which replied with a letter to Dixon's attorney indicating that its decision to deny the claim had not changed.

Dixon filed a complaint on October 12, 1995. On November 30, 1995, Dixon filed in the district court an affidavit of due diligence indicating that he was unable to personally serve Browning with the summons and complaint. The affidavit, which appears to be a preprinted form, indicates that Dixon's process server attempted to serve Browning at "5576 West Rochelle," but that "no apartment number [was] known." The affidavit further states that the process server "attempted normal and routine checks of telephone directories and real property" and was denied additional information from the apartment rental office.

---

[1] Browning filed an affidavit in the district court indicating that he gave his complete address to Dixon at the scene of the accident. Dixon did not refute Browning's averment; to the contrary, Dixon acknowledged that Browning provided his address, and that Browning lived at "5576 West Rochelle #29C, Las Vegas, Nevada." It is also undisputed that Dixon eventually mailed documents to Browning's complete address.

On December 19, 1995, Dixon filed in the district court an affidavit of compliance indicating that, pursuant to NRS 14.070(2), he served the summons and complaint on the Director of the Department of Motor Vehicles, and mailed a notice of service with the summons and complaint to Browning at "5576 W. Rochelle, Las Vegas, Nevada." Browning did not answer Dixon's complaint, and Dixon obtained a default on January 19, 1996, and a default judgment on February 26, 1996. Browning claims that he first learned of the complaint and default judgment after Dixon contacted Browning's insurer and demanded that the judgment be satisfied.

On April 26, 1996, Browning filed a motion to set aside the default judgment pursuant to NRCP 60(b)(1) and NRCP 60(c). Among other things, Browning argued that Dixon failed to exercise due diligence before resorting to the substitute service provisions of NRS 14.070(2). The district court noted at the hearing on Browning's motion that Dixon "followed the exact criteria set forth in NRS 14.070(2) and acted in good faith in serving the Department of Motor Vehicles by using the best address available." The district court's written order denies Browning's motion without discussion.

## DISCUSSION

NRS 14.070(2) authorizes a plaintiff to serve process on an "operator of a motor vehicle involved in an accident" by personally serving the Director of the Department of Motor Vehicles and sending notice of the service, together with the summons and complaint, to the defendant at "the address supplied by the defendant in his accident report, if any, and if not, at the best address available to the plaintiff."

NRS 14.070(5) provides that NRS 14.070(2) is not an exclusive method of service, but "if the operator defendant *is found* within the State of Nevada, he must be served with process in the State of Nevada." (Emphasis added.) NRS 14.070(6) further provides that NRS 14.070(2) applies to "nonresident motorists and to resident motorists who have left the state or *cannot be found* within the state following an accident which is the subject of an action for which process is served pursuant to this section." (Emphasis added.)

Thus, NRS 14.070(2) applies to nonresident motorists and resident motorists who have departed the state or cannot be found within the state. We conclude that the phrase "cannot be found" imposes an affirmative obligation on a plaintiff to diligently search for a resident motorist defendant to determine whether the defendant has, in fact, departed the state or cannot be located within the state. Any other conclusion contravenes the plain

meaning of the statute and violates the principles of procedural due process. *See* Sheriff v. Wu, 101 Nev. 687, 689-90, 708 P.2d 305, 306 (1985) ("Where a statute may be given conflicting interpretations, one rendering it constitutional, and the other unconstitutional, the constitutional interpretation is favored.") (citing Koscot Interplanetary, Inc. v. Draney, 90 Nev. 450, 530 P.2d 108 (1974)); McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986) ("words in a statute should be given their plain meaning unless this violates the spirit of the act").

In Wuchter v. Pizzutti, 276 U.S. 13 (1928), the United States Supreme Court held that a nonresident motorist statute that allowed service upon the secretary of state, but contained no provision for attempted notice to a nonresident defendant, violated due process of law. The fundamental requisite of due process is the opportunity to be heard. Grannis v. Ordean, 234 U.S. 385, 394 (1914). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1949). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Although impracticable and extended searches are not required, substitute service is available only "where it is not reasonably possible or practicable to give more adequate warning." *Id.* at 317; *see also* Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 484-91 (1988) (emphasizing that the reasonableness of notice depends on the particular circumstances, and holding that a personal representative in a probate proceeding was required to make "reasonably diligent efforts" to identify creditors of the estate).

The foregoing authorities make it clear that substitute service pursuant to NRS 14.070(2) is efficacious only if the plaintiff first demonstrates that, after due diligence, the resident defendant cannot be found within the state. Our decision today is consistent with other decisions wherein due diligence in locating nonresident motorist defendants was required to perfect service of process. *See* Halliman v. Stiles, 464 S.W.2d 573 (Ark. 1971); Drinkard v. Eastern Airlines, Inc., 290 S.W.2d 175 (Mo. Ct. App. 1956); Carlson v. Bos, 740 P.2d 1269 (Utah 1987); Colley v. Dyer, 821 P.2d 565 (Wyo. 1991). It is also consistent with NRCP 4(e)(1)(i), which allows for service by publication only when the defendant, "after due diligence, [cannot] be found

within the state." *See also* NRS 179.1171(4) (requiring plaintiffs to exercise reasonable diligence when locating property claimants in civil forfeiture actions). Having concluded that due diligence is a necessary prerequisite to substitute service pursuant to NRS 14.070(2), we now turn to Dixon's specific attempts to locate and personally serve Browning.

In Price v. Dunn, 106 Nev. 100, 787 P.2d 785 (1990), the plaintiff attempted to discover the defendant's address through the telephone book, inquiries at the power company, and a conversation with the defendant's stepmother. This court concluded that, despite the plaintiff's technical compliance with NRCP 4(e)(1)(i), "her actual efforts, as a matter of law, fall short of the due diligence requirement to the extent of depriving [the defendant] of his fundamental right to due process." *Id.* at 103, 787 P.2d at 786-87. This court also stated that "[w]here other reasonable methods exist for locating the whereabouts of a defendant, plaintiff should exercise those methods." *Id.; see also* Gassett v. Snappy Car Rental, 111 Nev. 1416, 906 P.2d 258 (1995); McNair v. Rivera, 110 Nev. 463, 874 P.2d 1240 (1994).

Dixon contends that he is not required to "hunt down" Browning, and that he made a reasonable attempt to personally serve Browning before resorting to substitute service. Dixon's contentions are belied by the above authorities and the record on appeal. Dixon mailed his initial letter to Browning's incomplete address, thereby reducing the likelihood that Browning would know Dixon was represented by counsel. Although Dixon made "routine checks" to locate Browning, he made no apparent attempt to locate Browning through Browning's employer or insurer, both of which were known to him. In so doing, Dixon ignored other reasonable methods for locating Browning and failed, under the circumstances, to apprise Browning of the action pending against him.

For these reasons, we conclude, as a matter of law, that Dixon did not exercise due diligence in attempting to serve Browning. A default judgment not supported by proper service of process is void and must be set aside. *Gassett,* 111 Nev. at 1419, 906 P.2d at 261. Accordingly, we reverse the district court's order denying Browning's motion to set aside the default judgment entered against him and remand this matter to the district court with instructions to set aside the default judgment.[2]

---

[2]Based on our disposition of this issue, we do not reach the merits of Browning's other allegations of error.