NANCY ABREU AND ROY ABREU, APPELLANTS,
*v.* RACHEL J. GILMER, RESPONDENT.

No. 31663

October 20, 1999                                     985 P.2d 746

*Richard S. Staub,* Carson City, for Appellants.

*Laxalt & Nomura* and *Daniel T. Hayward,* Reno, for Respondent.

---

Before MAUPIN, SHEARING and BECKER, JJ.

## OPINION

*Per Curiam:*

This appeal challenges the district court's order dismissing appellants' complaint for failure to serve respondent within 120 days after the complaint was filed, as required by NRCP 4(i). Appellants also challenge an interlocutory order quashing service of process for failure to exercise due diligence before resorting to service by publication. We conclude that the district court abused its discretion when it granted respondent's motion to quash service of process, and therefore erred when it granted respondent's motion to dismiss.[1] Accordingly, we reverse the dismissal order and remand this matter to the district court for proceedings consistent with this opinion.

### FACTS

Appellants Nancy and Roy Abreu (the "Abreus") were injured in an automobile accident allegedly caused by respondent Rachel Gilmer. The parties exchanged addresses and insurance information, and agreed not to call the police. According to the Abreus, Gilmer reported that her address was "1150 Fir St., Reno, Nevada." There was no exchange of birthdates, social security numbers, employers, or other identifying information.

After unsuccessful settlement negotiations with Gilmer's

---

[1]This court has repeatedly held that no appeal may be taken from an order quashing service of process. *See, e.g.,* Jarstad v. National Farmers Union, 92 Nev. 380, 552 P.2d 49 (1976). Instead, a petition for a writ of mandamus is the only procedural vehicle to challenge a district court's order quashing service of process. *Id.* In this case, the district court entered a final order dismissing the complaint pursuant to NRCP 4(i), and jurisdiction is therefore properly vested in this court. *See* NRAP 3A(b)(1); Levine v. Remolif, 80 Nev. 168, 390 P.2d 718 (1964) (holding that this court will review the propriety of interlocutory orders, after a final judgment has been entered, if the alleged errors are properly raised in the opening brief).

insurer, the Abreus filed a personal injury complaint on May 14, 1997. The Abreus sent a courtesy copy of the summons and complaint to Gilmer's insurer, and delivered the documents to process server Tom Jeffers for service on Gilmer.

Jeffers attempted service on June 5, 1997, at the Fir Street address, but learned that no such address existed. He then returned to Fir Street a second time to confirm that the address did not exist. Additionally, Jeffers consulted the telephone company's directory assistance to locate Gilmer, but was unsuccessful. Through a confidential source, Jeffers learned that Gilmer may have been residing with her mother-in-law at 1114 Greenbrae Drive in Sparks. Jeffers made three attempts to serve Gilmer at this address. Although Jeffers attempted service during the day and evening, on each occasion he did not find anyone home.

On July 1, 1997, the Abreus' attorney contacted Gilmer's insurer and requested Gilmer's address. The insurer refused to provide Gilmer's address. On July 2, 1997, an attorney called the Abreus' attorney and stated that he would be representing Gilmer on behalf of the insurer. The attorney requested a copy of the summons and complaint, but refused to accept service of process for Gilmer or provide any other assistance to the Abreus' attorney. The Abreus' attorney informed Gilmer's putative attorney that the Abreus would resort to service by publication if Gilmer could not be found. According to the Abreus, the attorney acknowledged this possibility and asked that he be advised when publication began.

A few days later, the Abreus' attorney called Gilmer's putative attorney, but the attorney was not available. The Abreus' attorney then told the attorney's secretary that if the attorney would not accept service of process, the Abreus would proceed with publication. The secretary called the Abreus' attorney later that day and told him to go ahead and publish service of process.

On July 29, 1997, the Abreus filed an affidavit of due diligence and an affidavit for publication of the summons and complaint. On August 6, 1997, the district court entered an order allowing service by publication. On September 17, 1997, the Abreus filed an affidavit that service by publication had been completed.[2]

Gilmer immediately filed a motion to quash service of process, in which she argued that the Abreus failed to exercise due diligence before resorting to service by publication. Gilmer also provided her current address in the motion to quash. Based upon this information, the Abreus obtained a new summons and personally

---

[2]Pursuant to NRCP 4(e)(1)(iii), the service was deemed completed on September 10, 1997, less than 120 days after the complaint was filed.

served Gilmer on October 7, 1997. Thus, personal service occurred 146 days after the complaint was filed.

On October 20, 1997, Gilmer filed a motion to dismiss pursuant to NRCP 4(i) because the complaint had not been personally served within 120 days after it was filed. Gilmer argued in her motion that the Abreus could not demonstrate good cause for the untimely service of process. The Abreus opposed the motion by arguing that Jeffers' diligent efforts to locate and personally serve Gilmer constituted good cause for the 26-day delay in personal service.

On November 14, 1997, the district court conducted a hearing on the motion to quash service of process.[3] Gilmer testified that at the time of the accident, she was living with her mother at 11590 Fir Street in Lemmon Valley, Nevada (not at 1150 Fir Street in Reno, where Jeffers first attempted service). Between the time of the accident and the date of the hearing, over a period of 30 months, Gilmer had lived at six different locations. Gilmer lived at the Greenbrae address (with her mother-in-law) until June 1, 1997, and lived in Washoe Valley during the time Jeffers attempted to locate and serve her.

Although Gilmer testified that she was listed in the telephone directory under "R & R Gilmer," she did not testify that the number listed was her telephone number when Jeffers was attempting to locate her, nor did she provide any explanation for Jeffers' inability to obtain her telephone number from directory assistance. Finally, Gilmer testified that she would never have given her address to someone who called and asked for it.

The district court indicated at the hearing that it would grant the motion to quash because the Abreus failed to exercise due diligence, as set forth in Gassett v. Snappy Car Rental, 111 Nev. 1416, 906 P.2d 258 (1995), before serving Gilmer by publication. The district court's written order granted the motion to quash by simply determining that the Abreus failed to exercise due diligence. By subsequent order, the district court found that the Abreus failed to demonstrate good cause for failing to complete service within the 120-day period prescribed by NRCP 4(i), and it therefore dismissed the complaint.

## DISCUSSION

This court reviews due diligence determinations for an abuse of discretion. *See, e.g.,* Browning v. Dixon, 114 Nev. 213, 954 P.2d 741 (1998). An order granting a motion to dismiss for failure to

---

[3]Gilmer's motion to dismiss for untimely service had not been fully briefed, and it was not discussed at the hearing on the motion to quash.

effect timely service of process is also reviewed for an abuse of discretion. *See* Lacey v. Wen-Neva, Inc., 109 Nev. 341, 849 P.2d 260 (1993).

Service by publication is authorized by NRCP 4(e)(1)(i), which provides in relevant part:

> When the person on whom service is to be made resides out of the state, or has departed from the state, *or cannot, after due diligence, be found within the state* . . . [the] court or judge may grant an order that the service be made by the publication of summons. (Emphasis added.)

This court has analyzed the due diligence requirement on a number of occasions. *See* Browning v. Dixon, 114 Nev. 213, 954 P.2d 741 (1998) (holding that the plaintiff failed to exercise due diligence by ignoring "other reasonable means" of locating the defendant such as the defendant's known employer and insurer);[4] Gassett v. Snappy Car Rental, 111 Nev. 1416, 906 P.2d 258 (1995) (holding that the plaintiff failed to exercise due diligence, partly because it made no attempt to locate the defendant through her known attorney); Price v. Dunn, 106 Nev. 100, 787 P.2d 785 (1990) (holding that although the plaintiff technically complied with the rule, she ignored other reasonable means of locating and serving the defendant).

Despite our previous decisions on this issue, we note that there is no objective, formulaic standard for determining what is, or is not, due diligence. The due diligence requirement is not quantifiable by reference to the number of service attempts or inquiries into public records. Instead, due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant. As the Utah Supreme Court recognized:

> The diligence to be pursued and shown . . . is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address . . . of the person on whom service is sought. . . . Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so.

Parker v. Ross, 217 P.2d 373, 379 (Utah 1950).

---

[4]Although *Browning* involved the due diligence requirement under NRS 14.070(2), our analysis of what constituted due diligence is applicable to disputes arising out of NRCP 4(e)(1)(i).

In light of our "underlying policy to have each case decided upon its merits," Christy v. Carlisle, 94 Nev. 651, 654, 584 P.2d 687, 689 (1978), we conclude that, under the specific facts presented here, the district court abused its discretion when it found that the Abreus failed to exercise due diligence before serving Gilmer by publication. The Abreus' efforts were appropriate and reasonably calculated to accomplish service on Gilmer.

In this case, no police report was prepared, and the parties exchanged limited personal information with each other. Moreover, Gilmer was a highly transient defendant whose whereabouts were not easily discoverable through normal investigative means. The Abreus promptly attempted personal service at the address Gilmer allegedly provided, and attempted to serve Gilmer at an address obtained through a confidential source. We further note that the Abreus' efforts to locate and serve Gilmer through Gilmer's known insurer and putative attorney were, in this instance, components of the due diligence inquiry.[5] Although the insurer and attorney were not obligated to assist the Abreus in serving Gilmer, we note again that the Abreus' efforts in this regard were reasonable and calculated to afford Gilmer her fundamental right to due process. *Price,* 106 Nev. at 103, 787 P.2d at 787. In sum, we conclude that the Abreus made genuine efforts to locate and serve Gilmer, and therefore exercised due diligence before resorting to service by publication.

Because service by publication was efficacious and completed within the 120-day limit prescribed by NRCP 4(i), we also conclude that the district court erred when it found that the 26-day delay in personally serving Gilmer was not excused by good cause. Accordingly, we reverse the order of the district court and remand this matter to the district court for proceedings consistent with this opinion.

---

[5]We reiterate, however, that actual notice of a suit is not an effective substitute for service of process. *See* C.H.A. Venture v. G.C. Wallace Consulting, 106 Nev. 381, 794 P.2d 707 (1990). Nevertheless, as is demonstrated in this case, receipt of actual notice of a complaint may be one factor in determining if the plaintiff made reasonable, diligent efforts to effectuate service of process.