**130 Nev., Advance Opinion 2**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| GABRIELA GONZALES-ALPIZAR, Appellant/Cross-Respondent, vs. EDWIN GRIFFITH, Respondent/Cross-Appellant. | No. 59387 <br><br> **FILED** <br><br> JAN 3 0 2014 <br><br> TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ DEPUTY CLERK |

Appeal and cross-appeal from a final determination concerning a complaint for divorce. Second Judicial District Court, Washoe County; David A. Hardy, Judge.

*Affirmed in part, reversed in part, and remanded.*

Richard F. Cornell, Reno,
for Appellant/Cross-Respondent.

Kristi Beth Luna, Reno,
for Respondent/Cross-Appellant.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

In this appeal, we address whether a spousal and child support order entered by a family court in Costa Rica is enforceable in Nevada. The Uniform Interstate Family Support Act (UIFSA), as enacted in Nevada, allows for the enforcement of a foreign support order when the order is entered in a country that is a recognized "state" under NRS Chapter 130. UIFSA sets forth three different methods by which a foreign

7/17/14: Corrected per letter to publishers. CJ

14-03115

country may be considered a "state" for purposes of enforcing that country's support orders. The first method clearly does not apply here, and we determine that neither of the other two methods authorizes the court to consider Costa Rica a state for UIFSA purposes. Pursuant to the second method, the Nevada Attorney General, under NRS 130.035(1), has not declared Costa Rica a foreign country in which reciprocal provisions will be made ensuring the enforceability of foreign support orders. Further, under the third method, the record fails to demonstrate, pursuant to NRS 130.10179(2)(a), that Costa Rica follows enforcement procedures that are "substantially similar" to those established under UIFSA. Accordingly, UIFSA does not require the district court to enforce the order.

In addition to UIFSA, however, a foreign support order may be enforced under the doctrine of comity. We determine that, because the existence of the parties' premarital agreement was not disclosed to the Costa Rican court issuing the support order, the award for spousal support should not be recognized in Nevada as a matter of comity. The child support award may be recognized, however, and we remand for the district court to make factual findings on Griffith's claim that the child support was obtained through fraud because Gonzales-Alpizar misrepresented Griffith's income and assets to the Costa Rican court.

### FACTS AND PROCEDURAL HISTORY

Respondent/cross-appellant Edwin Griffith, a resident of Reno, met appellant/cross-respondent Gabriela Gonzales-Alpizar, a citizen and native of Costa Rica, when he went to Costa Rica to visit friends. In 1999, the two were married in Costa Rica. Prior to the marriage, the parties entered into a premarital agreement prepared by Griffith's counsel and signed by both Gonzales-Alpizar and her counsel Maria Fait-Shaw in

Costa Rica. Among other provisions, the premarital agreement waived any claim for alimony or spousal support, unless the divorce resulted in one party becoming eligible for public assistance support. It also provided that the laws of the State of Nevada would govern the premarital agreement's execution and performance, without regard to where the parties resided.

After the parties were married, they returned to Reno with Gonzales-Alpizar's daughter Nicolle. Shortly thereafter, Gonzales-Alpizar gave birth to a son, Anthony Griffith-Gonzalez. Griffith and Gonzales-Alpizar resided in Reno for over three years. In 2002, their relationship began to deteriorate.

The family traveled to Costa Rica in February 2003, but Gonzales-Alpizar refused to return to Reno. Griffith returned alone, leaving Gonzales-Alpizar and the two children in Costa Rica. Griffith subsequently visited Costa Rica twice in 2003 and once in 2004. Griffith returned to Costa Rica one last time in February 2005, and the parties met to discuss a divorce settlement.

*Procedural history in Costa Rica*

*2005 Costa Rican spousal and child support order*

At the commencement of the parties' divorce settlement discussions in Costa Rica, Griffith was allegedly served with notice and process of a Demand for Alimony, which as explained by Gonzales-Alpizar includes spousal and child support under Costa Rican law. The parties dispute what occurred and whether Griffith was actually served with process. According to Gonzales-Alpizar, after both she and her attorney explained to Griffith that he was being served with legal documents regarding alimony and child support, Griffith became very angry, threw the papers to the floor, and immediately left. According to Griffith, however, a stranger approached him in the waiting room of the attorney's

office and read aloud from paperwork in Spanish. Griffith did not understand what the person was saying, and Gonzales-Alpizar refused to respond to his multiple requests to explain what was happening. He left the office with no paperwork and no explanation in English as to what was said. Gonzales-Alpizar's version is supported by a Costa Rican court officer's affidavit asserting that she served the Demand for Alimony upon Griffith in an attorney's office, Griffith understood what the documents were, he refused to receive them, and he left immediately.

Based on this alleged service and Griffith's failure to answer the complaint in a Costa Rican court, a default judgment was entered against Griffith in September 2005, which ordered him to pay $180 per month in spousal support, $235 per month in child support for Anthony, and an additional $235 per month in child support for Nicolle (2005 Costa Rican support order).[1] The support award was based on Gonzales-Alpizar's representation of Griffith's earned income. Gonzales-Alpizar failed to disclose the terms of the premarital agreement to the court.

*2007 Costa Rican divorce decree*

In January 2006, Gonzales-Alpizar filed a complaint for divorce against Griffith in Costa Rica. After an initial, unsuccessful attempt to serve process of the divorce complaint, Gonzales-Alpizar obtained the Costa Rican court's permission to seek service of process upon Griffith through publication in Costa Rica, despite knowing that Griffith resided in Nevada and making no effort to notify him of the divorce proceedings. Gonzales-Alpizar's divorce complaint also failed to

---

[1]Nicolle is not Griffith's biological child. A dispute exists as to whether Griffith adopted Nicolle under Costa Rican law.

inform the Costa Rican court of the existence of the premarital agreement entered between the parties in August 1999.

Griffith never responded to or appeared in the action, and in April 2007, the Costa Rican court entered a final divorce decree (2007 Costa Rican decree), granting Gonzales-Alpizar's request for divorce and giving her custody of the two children with parental authority jointly held. The prior award of alimony and child support under the 2005 Costa Rican support order was confirmed. The parties were finally divorced under Costa Rican law in June 2007, when the decree was published in the "Boletin Judicial."

*Procedural history in Nevada*

Meanwhile, Griffith filed a complaint for divorce in Nevada in April 2007.[2] Although a default divorce decree was initially entered, Gonzales-Alpizar successfully moved to set aside the default decree, and she filed an answer to Griffith's complaint for divorce in June 2010. At issue in the district court was whether the court had jurisdiction over the divorce proceeding, in light of the 2007 Costa Rican decree, and whether the court had authority to enforce the 2005 Costa Rican support order.

The district court first found that because the parties had been effectively divorced under the 2007 Costa Rican decree, it was unnecessary to enter any decree dissolving the bonds of matrimony in Nevada. Nevertheless, the court determined that service of process was not valid in the Costa Rican divorce proceeding, and while the court had no

---

[2]Griffith initially filed for divorce in Nevada in April 2006. However, the first divorce action was dismissed due to a lack of proper service.

authority to set aside that decree, the court would not enforce the spousal support and child custody provisions contained within it.[3]

As for the 2005 Costa Rican support order, the district court concluded that Griffith was served with notice and process in that proceeding.[4] The court found enforceable any support provision within that order, provided that the order is valid and enforceable under Costa Rican law. The district court also concluded that Costa Rica was the appropriate forum to determine the enforceability of the 2005 Costa Rican support order, including any defenses Griffith might have in that action, whether that order is still valid, or whether the 2007 divorce decree served to modify or vitiate it. The district court directed the parties to litigate those issues in Costa Rica, under the presumption that the district court would have authority to enforce the order once it was found to be valid and effective. The district court entered a final determination as to its jurisdiction over the matter, and both parties timely appealed. On appeal, Gonzales-Alpizar argues that the 2005 Costa Rican support order is enforceable in Nevada and that the support arrears should be reduced to

---

[3]The parties do not challenge, and we do not address, the court's determination that the parties were effectively divorced under the 2007 Costa Rican divorce decree.

[4]The district court found that although Griffith

> certainly did not understand the Demand for Alimony because it was written in Spanish, he had resources with which to understand the document and retain legal assistance. [Griffith] was also on notice of the difficulties he could encounter. He married a woman from another country, in her country and acquiesced to her post-marriage presence in her home country.

judgment.[5] Griffith asserts that the support order is unenforceable based on improper service of the Demand for Alimony and fraud in the procurement of the support order.

## DISCUSSION

To resolve this appeal, we must determine whether the 2005 Costa Rican support order is enforceable in Nevada either under the terms of UIFSA or under the doctrine of comity, both of which are issues of first impression.

### The 2005 Costa Rican support order is not enforceable under UIFSA

UIFSA governs multiple jurisdiction involvement in child support issues, and its purpose is to ensure that only one child support order is effective at any given time. *See Vaile v. Porsboll*, 128 Nev. ___, ___, 268 P.3d 1272, 1274 (2012). UIFSA has been codified in Nevada under NRS Chapter 130 and provides procedures for the enforcement and modification of a support order issued by another state. Under NRS 130.10179(2), the term "state" is defined to include a foreign country if one of the following three conditions is met: (1) the country has been declared to be a foreign reciprocating country under federal law, (2) the state's attorney general has declared the country a "state" because it has reciprocal provisions ensuring the enforcement of support orders, or (3) the country has enacted law or established procedures for enforcing support orders that are substantially similar to those under UIFSA. *See* NRS 130.10179(2).

The parties do not dispute that Costa Rica has not been declared a foreign reciprocating country under federal law. *See* NRS

---

[5]Gonzales-Alpizar does not challenge the district court's finding that the 2007 Costa Rican decree is invalid as it relates to spousal and child support.

130.10179(2)(b). Thus, the first definition of "state" is not met. And, we turn to whether Nevada has declared Costa Rica a "state" for purposes of UIFSA. Gonzales-Alpizar argues that the 2005 Costa Rican support order is enforceable under UIFSA because Costa Rica constitutes a "state" pursuant to NRS 130.035(1). NRS 130.035(1) provides that "[w]hen the Attorney General is satisfied that reciprocal provisions will be made by any foreign country . . . for the enforcement therein of support orders made within this State, the Attorney General may declare the foreign country . . . to be a state" as intended by NRS Chapter 130.

We conclude that Nevada has not recognized Costa Rica as a "state" for purposes of UIFSA enforcement. The Attorney General has not declared Costa Rica to be a foreign country in which reciprocal provisions will be made to ensure the enforceability of foreign support orders, as required by NRS 130.035(1). Additionally, the Nevada Department of Health and Human Services provides that "[r]eciprocity is the mutual agreement between the United States or State of Nevada and a foreign country to process child support cases." *See* Nev. Dep't of Health and Human Servs., Div. of Welfare and Supportive Serv., Child Support Enforcement Manual (Manual), ch. II § 211 (March 1, 2011). Costa Rica is not a foreign country that maintains a reciprocal agreement with the United States or Nevada. *Id.* Nevada specifically provides reciprocity in child support cases with only four countries other than those recognized by the United States, and Costa Rica is not listed as one of those countries. *See* Manual, *supra*, § 211.

We next consider whether Costa Rica meets the third definition of "state" by having procedures for the enforcement of support orders that are substantially similar to those under UIFSA. *See* NRS 130.10179(2). Gonzales-Alpizar contends that Costa Rica has procedures

substantially similar to those under UIFSA, thereby meeting the definition of "state" and permitting Nevada to enforce the 2005 Costa Rican support order, but not to modify the terms of that judgment. *See* NRS 130.2055(2). The only support for Gonzales-Alpizar's "substantially similar" argument is a comparison of the laws for establishing and modifying child support in Nevada and Costa Rica. That comparison, however, is not the relevant inquiry.

Rather, under NRS 130.10179(2), a foreign country may qualify as a state when it "[h]as enacted a law or established procedures . . . which are substantially similar to the procedures established under the Uniform Interstate Family Support Act." Thus, Costa Rica may be considered a "state" only if it can be shown that it has laws or procedures that allow for a foreign judgment to be recognized, *i.e.*, laws on reciprocity, and that those laws are "substantially similar" to UIFSA. *See* NRS 130.10179(2); *see also Haker-Volkening v. Haker*, 547 S.E.2d 127, 131 (N.C. Ct. App. 2001) ("UIFSA requires that 'a foreign nation must have substantially similar law or procedures to . . . UIFSA . . . (*that is, reciprocity*) in order for its support orders to be treated as if they had been issued by a sister State.'" (quoting Official Comment, N.C. Gen. Stat. § 52C-1-101(19) (1999) (emphasis added))).

The evidence presented by Gonzales-Alpizar, comparing Nevada's laws with Costa Rica's laws regarding child support awards, is irrelevant to the question of whether Costa Rica is a "state," and she makes no argument that Costa Rica has enacted procedures for interjurisdictional enforcement similar to those under UIFSA. Thus, because Gonzales-Alpizar did not establish that Costa Rica was a "state," we conclude that the 2005 Costa Rican support order is not enforceable under UIFSA. *See Haker-Volkening*, 547 S.E.2d at 131 (refusing to

(alterations in original) (emphasis added)

enforce a foreign support order when the party seeking to enforce the order failed to establish on the record that Switzerland was a "state" for the purposes of UIFSA).

*The spousal support provision of the 2005 Costa Rican support order is not enforceable under the doctrine of comity*

Although UIFSA does not apply to the 2005 Costa Rican support order, we must still consider whether the order might be enforceable by a Nevada court under the doctrine of comity. This doctrine is a principle of courtesy by which "the courts of one jurisdiction may give effect to the laws and judicial decisions of another jurisdiction out of deference and respect." *Mianecki v. Second Judicial Dist. Court*, 99 Nev. 93, 98, 658 P.2d 422, 424-25 (1983). This court has not previously considered the circumstances under which a foreign spousal and child support order will be enforceable in Nevada under the doctrine of comity.

In doing so, we consider the approach taken by the Restatement (Third) of Foreign Relations Law of the United States, which discusses reasons why a foreign judgment or order should not be enforced under comity. Section 482(1) provides: "[a] court in the United States may not recognize a judgment of the court of a foreign state" if "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law," or if "the court that rendered the judgment did not have jurisdiction over the defendant." Restatement (Third) of Foreign Relations Law of the United States § 482(1) (1987). Section 482(2) further provides that a court "need not recognize" a foreign judgment if:

> (a) the court that rendered the judgment did not have jurisdiction of the subject matter of the action;

(b) the defendant did not receive notice of the proceedings in sufficient time to enable him to defend;

(c) the judgment was obtained by fraud;

(d) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought;

(e) the judgment conflicts with another final judgment that is entitled to recognition; or

(f) the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum.

*Id.* § 482(2).

The Ninth Circuit Court of Appeals has adopted the Restatement (Third) approach to enforcing foreign judgments, stating that it "provide[s] sound guidance for assessing legal judgments of other nations." *Wilson v. Marchington*, 127 F.3d 805, 810 (9th Cir. 1997). Several state courts have also adopted Section 482 of the Restatement (Third) to analyze whether foreign orders should be recognized under the doctrine of comity. *See Office of Child Support v. Sholan*, 782 A.2d 1199, 1203-04 (Vt. 2001) (adopting the Restatement approach in determining whether or not to enforce a foreign support order); *see also Alberta Sec. Comm'n v. Ryckman*, 30 P.3d 121, 126 (Ariz. Ct. App. 2001); *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1185-86 (N.J. Super. Ct. App. Div. 2011).

We find the reasoning of Section 482 of the Restatement (Third) and these courts to be consistent with Nevada's jurisprudence under the Full Faith and Credit Clause, as Nevada courts will refuse to recognize a judgment or order of a sister state if there is "a showing of fraud, lack of due process, or lack of jurisdiction in the rendering state." *Rosenstein v. Steele*, 103 Nev. 571, 573, 747 P.2d 230, 231 (1987). We

therefore adopt Section 482 of the Restatement (Third) of Foreign Relations Law of the United States to analyze whether a foreign support award for spousal and child support should be recognized by Nevada courts under the doctrine of comity.

Griffith argues that the 2005 Costa Rican support order cannot be enforced by a Nevada court under the doctrine of comity based on lack of due process and fraud in the procurement of the order. We must consider whether Griffith's contentions are valid and thus prevent this court from recognizing the 2005 Costa Rican support order.

First, as to the due process argument, although the parties offer differing versions of the service of the Demand for Alimony, the district court found that Griffith was served with notice and process of the 2005 Costa Rican support order. Due process, in relation to comity, encompasses the idea that the order was granted after "proper service or voluntary appearance of the defendant." *Wilson*, 127 F.3d at 811. This court has stated that "'[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" *Browning v. Dixon*, 114 Nev. 213, 217, 954 P.2d 741, 743 (1998) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the record demonstrates that, at the very least, Griffith was reasonably made aware that Gonzales-Alpizar was serving him with some form of legal papers despite his inability to understand Spanish. Griffith was personally handed these papers while in an attorney's office to discuss a divorce settlement. Thus, substantial evidence supports the district court's determination that Griffith was properly served with the Demand for Alimony. *Bedore v. Familian*, 122 Nev. 5, 9-10, 125 P.3d

1168, 1171 (2006) (stating that this court will not disturb a district court's findings of fact "if they are supported by substantial evidence" (internal quotation omitted)). As such, lack of due process would not provide a basis to refuse to enforce the support order under the principle of comity.

Second, Griffith argues that the spousal support award was procured through fraud because Gonzales-Alpizar failed to disclose to the Costa Rican court the existence of the premarital agreement, which precluded any award of spousal support. Gonzales-Alpizar does not appear to challenge this factual assertion, instead arguing that the premarital agreement was void as a matter of Costa Rican law such that the lack of disclosure is immaterial.

Specifically, Gonzales-Alpizar argues that the parties' premarital agreement was unenforceable because she did not execute the agreement knowingly or voluntarily and because the agreement is unconscionable. *See* NRS 123A.080(1)(a) and (b). The validity of a premarital agreement is reviewed by this court de novo. *See Fick v. Fick,* 109 Nev. 458, 463, 851 P.2d 445, 449 (1993); *Sogg v. Nev. State Bank,* 108 Nev. 308, 312, 832 P.2d 781, 783 (1992); *see also* NRS 123A.080(3). Our review of the record demonstrates that Gonzales-Alpizar did knowingly and voluntarily sign the premarital agreement, and Gonzales-Alpizar has failed to demonstrate how the agreement was unconscionable. Thus, we conclude that the district court did not commit reversible error in concluding that the parties' premarital agreement was enforceable. *See* NRS 123A.080(1) and (2); *Sogg,* 108 Nev. at 312, 832 P.2d at 783-84.

Because the premarital agreement is enforceable, we decline to recognize and enforce the 2005 Costa Rican spousal support order under the doctrine of comity where a spouse purposefully failed to provide to the

foreign court the premarital agreement that governed the parties' agreement regarding spousal support.

*The child support portion of the 2005 Costa Rican support order might be entitled to enforcement under the doctrine of comity*

However, the failure to disclose the premarital agreement would not necessarily prevent the district court from enforcing the child support order because the agreement contained no provision concerning child support. The 2005 Costa Rican support order awarded child support for Griffith's biological son Anthony and Gonzales-Alpizar's daughter Nicolle. Griffith challenges any responsibility to support Nicolle because Griffith claims Gonzales-Alpizar misrepresented Griffith's parental relationship with Nicolle to the Costa Rican court. Griffith also argues that the entire child support award was procured through fraud because Gonzales-Alpizar misrepresented his income and properties in procuring the award, and the award would render him destitute in violation of Nevada public policy. The district court failed to make any specific findings concerning Griffith's adoption of Nicolle or his fraud claim, instead concluding that

> [Griffith] may have had and may still have valid defenses to the alimony/child support proceedings. The questions of his responsibility for Nicolle, . . . and [Gonzales-Alpizar's] alleged fraud, in describing Plaintiff's resources to the Costa Rican court . . . are not resolved to [Griffith's] satisfaction. However, the only forum for resolving these issues is the Country of Costa Rica.

Because the district court deferred ruling on Griffith's parental status in regard to Nicolle and his other defenses to the child support award to the Costa Rican court, this court is unable to determine whether comity should be granted or denied to the child support award.

Thus, we remand this issue to the district court to make appropriate findings of fact and conclusions of law under the Restatement (Third) approach adopted by this court, and to determine whether the child support portion of the 2005 Costa Rican support order should be enforced as a matter of comity.

Because the district court erred in concluding that it may have to enforce the spousal support provision of the 2005 Costa Rican support order if it is determined valid and enforceable in a Costa Rican court, we reverse that portion of the district court's order, and we affirm in all other respects.

_____, J.
Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta