KIMBLE McNAIR, M.D., Appellant, v. ELIZABETH ANN RIVERA, Respondent.

No. 23461

May 19, 1994

874 P.2d 1240

*Geraldine Kirk-Hughes*, Las Vegas, for Appellant.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

In 1989, Dr. Kimble McNair, a physician specializing in obstetrics and gynecology, was convicted of six counts of sexual assault committed during the examination of his patient-victims. His convictions resulted in four consecutive and two concurrent life sentences. This court affirmed the judgment and sentences in McNair v. State, 108 Nev. 53, 825 P.2d 571 (1992).

Respondent Elizabeth Ann Rivera, the victim who first reported McNair's conduct, thus triggering his arrest and the coming forward of other victims, filed two civil actions against McNair after his convictions. Rivera's first complaint sought declaratory relief on the issue of whether McNair's malpractice insurer was liable for coverage stemming from McNair's criminal conduct. The district court granted summary judgment in favor of the insurer; we affirmed on appeal. Rivera v. Nevada Medical Liab. Ins. Co., 107 Nev. 450, 814 P.2d 71 (1991).

On November 14, 1990, after having first obtained a finding of reasonable probability of medical malpractice by the Medical-Legal Screening Panel, Rivera filed the amended complaint against McNair which is the subject of this appeal. The complaint seeks damages against McNair based upon allegations of medical malpractice and breach of fiduciary duties.

On March 6, 1991, Rivera filed an ex parte application for extension of time to accomplish service of the summons and amended complaint. The application, supported by affidavits, alleged that seven attempts to serve McNair at his residence[1] had been foiled by the uncooperative nature of those in the home who refused to open the door or accept service on McNair's behalf. The application for extension was granted.

On July 3, 1991, the district court again extended the time for service of process until sixty days after this court's remittitur in Rivera's insurance case. Remittitur issued on July 16, 1991; Rivera therefore had until the middle of September to serve McNair. However, in lieu of attempting to effectuate personal service during the period of the extension, Rivera obtained an order for publication of summons, filed July 12, 1991, which

---

[1]McNair had been released from custody on bail, pending his appeal.

directed that service be accomplished by publication in the Nevada Legal News and by direct mail to McNair's address.

The order of publication was supported by an "Affidavit for Publication of Service" of Rivera's counsel averring that:

> [d]espite repeated attempts the defendant has repeatedly avoided service of the amended complaint *as seen by the affidavit of due diligence* (Exhibit A). Discussions with defendant's counsel regarding this service problem are memorialized in a copy of my May 14, 1991, letter to Roy Smith (Exhibit B) and a copy of his May 27, 1991, letter to me (Exhibit C) attached hereto.

(Emphasis added.)

The affidavit of due diligence referenced by Rivera's counsel in his affidavit in support of the order of publication was dated April 22, 1991, and stated simply that Rivera's process server had attempted to serve McNair at the oral hearing of his criminal appeal before this court, almost three months before the court's second extension of time for service, but that McNair was not present. This is the only documented evidence on the record before us of an attempt to serve McNair between March 6, the date of the first extension of time for service, and July 12, the date of the order allowing service by publication.[2] There is no documentation of any attempt to serve McNair following the court's second extension of time for service.

The referenced letter to Roy Smith, who was McNair's attorney before the Medical-Legal Screening Panel, declared the difficulty Rivera's counsel was having in attempting to serve McNair, but documented *no specific attempts to do so.* Moreover, the letter contended that McNair's appearance before the screening panel constituted an appearance that was tantamount to service under NRCP 5, rather than NRCP 4.

Smith disagreed in response and stated that his firm had not yet decided whether to represent McNair in the civil action. Nevertheless, Smith requested that Rivera's counsel not seek a default

---

[2]It should be noted that Rivera's application in support of the lower court's second (July 3, 1991) extension of time for service of process was not included in the record on appeal. Thus, because McNair did not include this document in the designation of contents of record on appeal, and because Rivera did not file a supplemental designation, as allowed by NRAP 10(a), this court has not been made cognizant of any additional attempts at service which might have been documented by this application. However, according to one of McNair's pleadings below, the court's July 3rd order was issued in response to an application filed the same day and supported by an affidavit of due diligence signed on April 22, 1991. If this is correct, it appears that the affidavit of due diligence in support of Rivera's affidavit for publication of service was the same affidavit of due diligence which had been used to support the second extension of time for service.

judgment against McNair without providing his firm with three days' notice of the intent to do so.[3]

After service by publication had been accomplished and McNair failed to answer, default was entered against him on September 7, 1991. Shortly thereafter, the court held a "prove-up" hearing and entered default judgment against McNair in the amount of $5,000,000. Although McNair has not supplied this court with a transcript of the hearing upon which the judgment was based, the court apparently heard the testimony of Carol McKeever of Clark County's Rape Crisis Center regarding the effect of the rape on Rivera, and also reviewed the transcript of McNair's criminal trial.

Some five months later, on February 12, 1992, McNair unsuccessfully filed a motion to vacate the default and set aside the judgment. The order denying the motion chastised McNair for waiting five months to set aside the judgment, stating it was

> clear that Dr. McNair was aware of the judgment against him. This case was one of great public interest, and the judgment received media attention . . . . After the news stories, [bail] hearings were held in the criminal prosecution against Dr. McNair . . . . During at least one of [which] . . . Dr. McNair's criminal attorney discussed the default judgment.

The court found the delay unreasonable, noting that

> [s]etting aside the judgment—on a motion made five months later—would destroy [Rivera's] statutory lien and related security on Dr. McNair's property. This would give Dr. McNair the opportunity to dispose of his property before a new judgment could be entered, thus forever depriving Ann Rivera of compensation for what her doctor did to her.

However, in consideration of McNair's interests, the court declared a willingness to set aside the default judgment and hold a new prove-up hearing provided McNair would agree to one of two conditions. McNair could either post sufficient security, in the form of a $750,000 bond, or, in the alternative, any modification of the $5,000,000 award following the prove-up hearing would relate back to the original judgment, thus preserving the priority and integrity of Rivera's lien and security in McNair's property.

Rather than accepting either of the alternatives, McNair appealed.

---

[3]Following this court's opinion in Rivera's action against McNair's insurance company, Smith apparently determined that he would not be defending McNair in the civil action.

## DISCUSSION

McNair insists that service by publication was improper and ineffectual because the order authorizing publication was not adequately supported by evidence of due diligence in attempting to personally serve McNair, as required by NRCP 4(e)(1)(i).[4] McNair thus concludes that the default judgment must be set aside.

Although Rivera has documented several unsuccessful attempts to serve McNair at his residence prior to March 6, 1991, these attempts are not at issue here, having formed the basis for the uncontested March 6, 1991, order extending the time of service. The issue of moment concerns Rivera's utilization of the added service time provided by the court's extensions. The district court entered two orders extending the time for service of process which, in combination, gave Rivera between March 6, 1991, and September 14, 1991, to personally serve McNair. However, the only documented evidence of any attempt to serve McNair during this six-month time period is the Affidavit of Due Diligence attached to Rivera's counsel's affidavit for publication of summons, which lists *only one attempt* on the part of Rivera to serve McNair during the time covered by the first extension and no attempt at service following the second extension.[5]

The affidavit for publication of service was filed three months after this one attempt to serve McNair, on July 12, 1991, with over two months remaining on Rivera's latest extension of time to

---

[4]NRCP 4(e)(1)(i) provides in pertinent part as follows:

(1) *Service by Publication.*

(i) General. When the person on whom service is to be made resides out of the state, or has departed from the state, *or cannot, after due diligence, be found* within the state, or conceals himself to avoid the service of summons, and the fact shall appear, by affidavit, to the satisfaction of the court or judge thereof, and it shall appear . . . by a verified complaint on file, that a cause of action exists against the defendant in respect to whom the service is to be made . . . such court or judge may grant an order that the service be made by the publication of summons.

(Emphasis added.)

[5]The Affidavit of Due Diligence provided:

Affiant recived [sic] a Summons & Complaint to be served upon Kimble McNair at North Las Vegas, Suprem [sic] Court on the 10th day of April, 1991[.] Affiant attempted services [sic] on McNair 11th day of April, McNair did had [sic] a Court case at North Las Vegas, Suprem [sic] Court but did not appear personnaly [sic], and was represented by his attorney, Affiant was told not to served [sic] his attorney for he could not accepted [sic] service of process on behalf of McNair.

effectuate service. The single effort referenced in the affidavit of due diligence clearly falls short of that required by NRCP 4(e)(1)(i). As this court stated in Price v. Dunn, 106 Nev. 100, 103, 787 P.2d 785, 787 (1990): "Where other reasonable methods exist for locating the whereabouts of a defendant, plaintiff should exercise those methods." When a plaintiff fails to do this, an "affidavit [which] technically complies with NRCP 4(e)(1)(i)" is insufficient to overcome the fact that the plaintiff's "actual efforts, as a matter of law, fall short of the due diligence requirement to the extent of depriving [a defendant] of his fundamental right to due process." *Id.*[6]

Rivera paints an appellate picture of McNair as a man who made continuous efforts to evade counsel's persistent attempts to have him personally served. Unfortunately, this picture is not supported by any affidavit or other evidence cognizable by this court that shows any real diligence in attempting to serve McNair during the six-month period granted by the court's two extensions.

McNair was a convicted criminal, who, although out on bail, was nevertheless under obvious restrictions that would hardly render him impervious to diligent and resourceful efforts to serve him with civil process. McNair states, for example, that he was required during this time to report daily and in person to Intake Services at the Clark County Detention Center. While McNair has provided no documentation of this allegation, it is likely that some such restriction would be placed upon a person in his situation. The anemic efforts to effectuate service on McNair, especially with six months to accomplish the task, is analogous to

---

[6]When the inadequacy of the affidavit of due diligence was discussed during oral argument, Rivera's counsel argued that his own cover "Affidavit for Publication of Summons" should serve as evidence of further attempts to serve McNair. However, the latter affidavit clearly references the affidavit of due diligence for proof of its claims, stating that the "repeated attempts" to serve McNair are "seen by" the affidavit of due diligence. Counsel's cover "Affidavit for Publication of Summons" does not, in and of itself, contain any further allegations of any other attempts to serve McNair. The cover affidavit also references a May 14, 1991 letter to McNair's former counsel, Roy Smith. This letter, however, while stating that "[w]e have been attempting to serve Dr. McNair for some time and at considerable expense[,]" lacks any specific allegations of attempts to serve McNair. In short, the cover affidavit fails to attest to any specific evidence of attempts to personally serve McNair.

Moreover, although there is no indication in the record that McNair raised the sufficiency of the affidavit of due diligence in his motion to set aside the default judgment, Rivera's argument that the issue was not properly preserved for appeal must fail since the district court's issuance of the order for service by publication on an inadequate affidavit is plain error. *See, e.g.,* Emmons v. State, 107 Nev. 53, 61, 807 P.2d 718, 723 (1991) (court may review plain error and constitutional error *sua sponte*).

the situation in *Price,* where the plaintiff attempted to determine the location of the defendant by searching the telephone book, the power company records, and making one phone call to the defendant's stepmother. There were no attempts to make "additional, simple efforts" such as calling other known relatives or consulting the phone book covering the area of the defendant's residence, once informed thereof by the call to the stepmother. *Price,* at 103, 787 P.2d at 787. We must conclude from the evidence of record that there was no adequate showing of due diligence to support an order for service by publication.

Further support for the result we are forced to reach on appeal is found in Rivera's failure to follow the terms of NRCP 55(b)(2), which provides, in pertinent part:

> **(b) Judgment.** Judgment by default may be entered as follows:
>
> . . . .
>
> (2) *By the Court.* In all other cases the party entitled to a judgment by default shall apply to the court therefor . . . . [i]f the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. . . .

We conclude that Rivera violated this statute by not providing McNair with three days' notice of the prove-up hearing, thus rendering the default judgment void (Christy v. Carlisle, 94 Nev. 651, 654, 584 P.2d 687, 689 (1978)), and subject to a motion for relief under NRCP 60(b)(3).

In ruling as we do, it is necessary to address the issue of whether McNair had "appeared in the action" for purposes of NRCP 55(b)(2). Rivera does not contest McNair's disavowal of notice of the prove-up hearing, but argues instead that no notice was required since McNair had not appeared in the action. This court has construed the proposition of what constitutes an appearance broadly:

> An appearance for purposes of NRCP 55(b)(2) does not require a presentation or submission to the court; indeed, a course of negotiation between attorneys is sufficient to constitute an appearance for purposes of NRCP 55(b)(2) where the defendant has indicated a clear purpose to defend the suit.

Gazin v. Hoy, 102 Nev. 621, 624, 730 P.2d 436, 438 (1986) (citing Franklin v. Bartsas Realty, Inc., 95 Nev. 559, 598 P.2d 1147 (1979)).

McNair contends that, under this standard, an appearance was entered by him pursuant to the correspondence exchanged between Rivera's counsel and McNair's former counsel, Roy Smith. Specifically, on May 14, 1991, Rivera's attorney, Daniel F. Polsenberg, sent the following letter to Roy E. Smith, who had represented McNair before the Medical-Legal Screening Panel:

> Dear Roy:
> We have been attempting to serve Dr. McNair for some time and at considerable expense. His efforts to avoid service are so successful, we simply cannot pursue this course any longer.
> In my legal opinion, by defending before the Medical Legal Screening Panel, Dr. McNair has appeared in this case. Therefore, we consider him served under NRCP Rule 5, rather than Rule 4.
> Enclosed is another copy of the amended complaint. We will extend to you another 20 days from the receipt of this letter in which to answer or otherwise respond to the complaint. If you do neither, I will enter a default against Dr. McNair and proceed accordingly.
> Thank you for your attention to this matter.

On May 27, 1991, following the receipt of Polsenberg's letter, Smith responded as follows:

> Dear Dan:
> This will confirm our various telephone conferences on May 21, 1991, regarding the above-referenced case, and, in particular, your letter dated May 14, 1991. As you are well aware, I certainly disagree with you that our representation of Dr. McNair before the Medical Legal Screening Panel constitutes a general appearance in the pending Eighth Judicial District Court case. I believe this firm has repeatedly advised you that until Dr. McNair, in fact, is personally served that no decision would be made regarding this firm's representation of Dr. McNair. In any event, it appears that the issues set forth in your May 14, 1991 letter have, at least temporarily, been resolved: it is my understanding that you will apply for, and presumably obtain, an Order from Judge Bonaventure extending your time to serve Dr. McNair for up to 30 days following the decision of the Supreme Court of Nevada on the pending declaratory relief action. At that time, and depending on what the Supreme Court does, we will once again discuss your May 14, 1991, letter. While we await a Supreme Court Order, this will confirm that you will not enter a default against Dr. McNair without providing the

undersigned with three-days [sic] notice of your intent to do so.

Dan, I really appreciate your cooperation on this matter, and, as always, if you have any questions or comments, please feel free to contact me.

One might conclude that Smith's letter fails to "indicate a clear purpose to defend the suit" in stating that no decision had been made regarding whether Smith would continue to represent McNair, a decision which was eventually made in the negative. The district court so construed the letter, signing an order stating that Smith's letter failed to indicate an intent to defend. Although we understand the basis for the district court's ruling, we do not agree with the result reached by the lower court.

Given the "underlying policy to have each case decided upon its merits" (*Christy*, at 654, 584 P.2d at 689), we conclude that Smith's "confirmation" to Polsenberg that Smith would receive three days' notice before the entry of any default against his client should be recognized as an obligation of notice prior to default, irrespective of the possibility that Smith would not be representing McNair at the time of the notice. At least Smith impliedly took upon himself the responsibility of apprising McNair of Rivera's intent to seek default even if other counsel then represented McNair.

Moreover, in his letter to Smith, Rivera's counsel stated that it was his legal opinion that McNair had made an appearance in the case by defending before the Medical-Legal Screening Panel. Whether right or wrong, the expression of that conclusion should have caused Rivera's counsel to realize that he had provided the necessary foundation for giving McNair the three-day notice required for any defendant who has made an appearance.[7]

In addition to the issues previously discussed, Rivera urges the proposition that, notwithstanding the validity of any of McNair's grounds for setting aside the default judgment, the district court did provide for the setting aside of the judgment under conditions

---

[7]Although Rivera'a counsel contends that Smith later convinced him that McNair's appearance before the Medical-Legal Screening Panel was not an appearance for purposes of NRCP 55(b)(2), and that the district court so found, it is clear from Smith's letter that the two still "disagreed" on this point at the time Smith wrote his letter. In any event, such an unexpressed change of opinion by Rivera's counsel, unaccompanied by any communication to Smith indicating that no notice of intent to take a default would be given, provides no basis, in law or equity, for favoring the validity of Rivera's position.

fashioned to protect the interests of both parties. Rivera accordingly maintains that overall, the district court acted wisely and within its sound discretion in imposing "just terms" on McNair's right to a hearing.[8]

Rivera emphasizes that McNair's liability for Rivera's injuries is conclusively established by statute,[9] and that the only issue McNair may contest at a hearing is the amount of Rivera's damages. Rivera suggests that the district court order conditionally vacating the default judgment and providing for a new prove-up hearing protects and advances McNair's interest in contesting the amount of any damage award while protecting Rivera's right to be assured of some means of satisfying her judgment. Rivera supports her position by citing to various commentaries and case law regarding the setting aside of default judgments under the federal rules of civil procedure.[10]

Unfortunately, the district court's final order, with its attendant conditions, is not a sustainable order, however equitable its intent. Because the default judgment was void, having been entered without notice of prove-up hearing and following an erroneously entered order to allow service by publication, any conditions placed upon an order setting aside the judgment are likewise void. The legally dead default judgment may not be a source of life to another order that purports to provide life support to the original judgment unless certain conditions are

---

[8]NRCP 60(b) provides that relief from a final judgment should be granted "upon such terms as are just."

[9]NRS 41.133 provides that "[i]f an offender has been convicted of the crime which resulted in the injury to the victim, the judgment of conviction is conclusive evidence of all facts necessary to impose civil liability for the injury."

[10]For example, according to 7 James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 60.19 (2nd ed., 1993), one of the factors a district court should consider in determining whether to set aside a default judgment is "whether there are any intervening equities which make it inequitable to grant relief . . . ."

Additionally, it has been stated that:
Relief from a judgment is to be "upon such terms as are just." Thus the court, in addition to its general discretion whether to open a judgment, has further discretion to impose such conditions as it deems fit, with the moving party then giv[en] the choice either of complying with the conditions or allowing the judgment to stand.

11 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2857 (1973). Accordingly, it has been held that "[i]n granting a motion to vacate a default judgment the District Court may impose reasonable conditions . . . . It may also be appropriate, in some cases, for the defendant to be required to post bond to secure the amount of the default judgment pending trial on the merits." Thorpe v. Thorpe, 364 F.2d 692, 694 (D.C. Cir. 1966).

accepted by McNair. Accordingly, we are compelled to reverse the district court's order and require that the default judgment be set aside unconditionally.

We are aware of the unfortunate consequences which may result from this decision. Although Rivera's cause of action against McNair is not lost, her ability to satisfy any future judgment against McNair may be in severe jeopardy. This we deeply regret. Nevertheless, McNair is entitled to the procedural protections of the law. It is this court's often unhappy duty to uphold the law even in instances where, in the name of equity, we would prefer to ignore it.

## CONCLUSION

The district court's order is reversed, and this matter is remanded to the district court with instructions to enter an order unconditionally granting McNair's motion to set aside the default judgment.