BRUCE KIRKPATRICK, Petitioner, v. THE EIGHTH JUDI-
CIAL DISTRICT COURT OF THE STATE OF NEVADA, in
and for THE COUNTY OF CLARK, and THE HONOR-
ABLE ROBERT E. GASTON, District Judge, Family
Court Division, Respondents, and SIERRADAWN KIRK-
PATRICK CROW, Real Party in Interest.

No. 37593

March 14, 2003                                    64 P.3d 1056

*Gayle F. Nathan,* Las Vegas, for Petitioner.

*Rebecca L. Burton,* Las Vegas; *Bruce I. Shapiro,* Henderson, for
Real Party in Interest.

Before the Court EN BANC.

## OPINION ON REHEARING

By the Court, SHEARING, J.:

On April 11, 2002, this court issued an opinion in this case granting the petition for a writ of mandamus.[1] Subsequently, the real party in interest filed a rehearing petition. After reviewing the rehearing petition, as well as the briefs and appendix, we conclude that rehearing is warranted, and we grant the petition for rehearing.[2] We now withdraw our April 11, 2002, opinion and issue this opinion in its place.

Bruce Kirkpatrick asked us to hold unconstitutional NRS 122.025, which permits a minor under the age of sixteen to marry with the consent of one parent and district court authorization. Under that statute, the district court permitted Kirkpatrick's fifteen-year-old daughter to marry a forty-eight-year-old man with the consent of her mother, but without the knowledge of her father. We conclude that NRS 122.025 is constitutional and that the district court was correct in denying Kirkpatrick's petition to annul his daughter's marriage. We, therefore, deny this petition for extraordinary relief.

### FACTS

SierraDawn Kirkpatrick Crow is the daughter of Karen Karay and petitioner Bruce Kirkpatrick. In 1990, Karay and Kirkpatrick were divorced in California. As part of the divorce decree, Karay and Kirkpatrick were awarded joint legal and physical custody of SierraDawn. In 1992, Karay and SierraDawn moved from California to New Mexico. In December 2000, when SierraDawn was fifteen years old, she informed her mother that she desired to marry her guitar teacher, forty-eight-year-old Sauren Crow. SierraDawn's mother approved of the marriage. However, under New Mexico law, SierraDawn was not permitted to marry. Therefore, SierraDawn, her mother, and Crow traveled to Las Vegas where SierraDawn and Crow could marry, if granted permission by the court.

Karay filed a petition with the Clark County district court to obtain judicial authorization for SierraDawn's marriage. With the petition, Karay filed an affidavit consenting to the marriage, in which she stated that she has ''seen no other couple so right for each other,'' that they ''have very real life plans at home, in the

---

[1]*Kirkpatrick v. Dist. Ct.*, 118 Nev. 233, 43 P.3d 998 (2002).

[2]An exhibit to the petition for rehearing is an application for a marriage license in New Mexico, which was obtained after SierraDawn turned sixteen. A subsequent marriage under New Mexico law could render this case moot, but in view of the important constitutional issues raised and the prior opinion issued, we will consider this case.

town in which we all reside," and that "[t]heir partnership and their talents will be most effectively utilized by this marriage." The district court found that good cause existed under Nevada law for the marriage, and ordered that a marriage license be issued to SierraDawn and Crow. On January 3, 2001, SierraDawn and Crow were married in Las Vegas.

When Kirkpatrick first learned of SierraDawn's marriage, he sought an ex parte temporary restraining order in the New Mexico district court. That court granted the temporary restraining order, and awarded Kirkpatrick immediate legal and physical custody of SierraDawn. Four days later, however, the court rescinded its order because it found that SierraDawn's marriage was valid under Nevada law, and that SierraDawn was emancipated as a result of the marriage.[3]

Kirkpatrick then asked the Clark County district court to vacate its earlier order authorizing SierraDawn's marriage and to annul the marriage. Following a hearing, during which Kirkpatrick was present and SierraDawn and Crow were physically absent, but were represented by counsel, the district court entered an order denying Kirkpatrick's motion. The district court concluded that the marriage complied with Nevada law and determined that Kirkpatrick lacked standing to challenge the marriage's validity.

Thereafter, Kirkpatrick filed this petition seeking a writ of mandamus to compel the district court to vacate its order authorizing SierraDawn's marriage and to annul the marriage.

## DISCUSSION

A writ of mandamus is available "to compel the performance of an act [that] the law [requires] as a duty resulting from an office, trust or station."[4] But we will not issue a writ of mandamus to control a trial court's discretionary action unless the court has manifestly abused its discretion.[5] Mandamus is an extraordinary remedy, and it is within the discretion of this court to determine if a petition will be considered.[6] We will consider this petition because

---

[3]At common law, marriage is generally sufficient to constitute emancipation. *See* 1 Donald T. Kramer, *Legal Rights of Children* § 15.04, at 672 (2d ed. 1994). Although NRS 129.080 provides that a child "who is at least 16 years of age, married or living apart from his parents . . . may petition the . . . court . . . for a [judicial] decree of emancipation," this statutory provision does not expressly abrogate the common law effect of marriage as emancipating a minor. It does not appear that judicial action is required for emancipation to occur. A judicial decree, however, provides an emancipated minor with tangible evidence of his or her emancipated status.

[4]NRS 34.160.

[5]*Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).

[6]*Smith v. District Court,* 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

it raises important issues of public policy and challenges the constitutionality of a Nevada statute, which is applied in contexts wherein review may be evaded.[7]

Kirkpatrick asserts that, because NRS 122.025 allows the court to approve the marriage of a person under the age of sixteen with the consent of only one parent, he has been deprived of his fundamental right to the parent-child relationship without a compelling reason. Kirkpatrick also maintains that his procedural due process rights were infringed because he was not provided with notice, with an opportunity to be heard, or with an opportunity to object to his daughter's marriage before the court authorized it. Thus, Kirkpatrick raises both substantive and procedural due process challenges to Nevada's marriage consent statute.[8]

It is well settled that states have the right and power to establish reasonable limitations on the right to marry.[9] This power is justified as an exercise of the police power, which confers upon the states the ability to enact laws in order to protect the safety, health, morals, and general welfare of society.[10] Pursuant to this power, the Nevada Legislature enacted NRS 122.025, which states, in relevant part:

> 1. A person less than 16 years of age may marry only if he has the consent of:
> (a) Either parent; or
> (b) Such person's legal guardian,
> and such person also obtains authorization from a district court as provided in subsection 2.
> 2. In extraordinary circumstances, a district court may authorize the marriage of a person less than 16 years of age if the court finds that:
> (a) The marriage will serve the best interests of such person; and
> (b) Such person has the consent required by paragraph (a) or (b) of subsection 1.

[7]See Binegar v. District Court, 112 Nev. 544, 548, 915 P.2d 889, 892 (1996).

[8]SierraDawn contends that because Kirkpatrick did not raise these issues before the district court, these issues are not properly before us. See Wolff v. Wolff, 112 Nev. 1355, 1363-64, 929 P.2d 916, 921 (1996) (stating that an issue not raised in the district court is considered waived on appeal). Because this petition raises important constitutional issues, we will consider them. See McNair v. Rivera, 110 Nev. 463, 468 n.6, 874 P.2d 1240, 1244 n.6 (1994) (recognizing that this court can consider constitutional issues sua sponte).

[9]Zablocki v. Redhail, 434 U.S. 374, 386 (1978).

[10]Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991) (plurality opinion).

Kirkpatrick argues that this statute violates his constitutional interest in the care, custody, and management of his daughter since it neither requires his consent nor gives him an opportunity to be heard on the issue of his daughter's marriage. The United States Supreme Court has held that parents have a fundamental liberty interest in the care, custody, and management of their children.[11] However, the United States Supreme Court has also held that, although these rights are fundamental, they are not absolute.[12] The state also has an interest in the welfare of children and may limit parental authority.[13] The Supreme Court has even held, where justified, that parents can be totally deprived of their children forever.[14] If the state can completely eliminate all parental rights, it can certainly limit some parental rights when the competing rights of the child are implicated.

The United States Supreme Court has held that the right to marry is a fundamental right.[15] In *Zablocki v. Redhail,* the Court stated:

> "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.
>
> Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival."[16]

In *Zablocki,* when Wisconsin sought to restrict the right to marry, the Supreme Court said:

> It is not surprising that the decision to marry has been placed on the same level of importance as decisions relating to procreation, childbirth, child rearing, and family relationships. As the facts of this case illustrate, it would make little sense to recognize a right of privacy with respect to other matters of family life and not with respect to the decision to enter the relationship that is the foundation of the family in

---

[11]*See, e.g., Santosky v. Kramer,* 455 U.S. 745, 753 (1982); *see also Troxel v. Granville,* 530 U.S. 57, 65 (2000) (stating that "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court"); *Parham v. J. R.,* 442 U.S. 584, 602 (1979) (noting that "[o]ur jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children").

[12]*Prince v. Massachusetts,* 321 U.S. 158, 166-67 (1944).

[13]*Lassiter v. Department of Social Services,* 452 U.S. 18 (1981); *see also Prince,* 321 U.S. at 166 (recognizing that the state may require school attendance, vaccination, medical treatment, and regulate or prohibit child labor).

[14]*Santosky,* 455 U.S. at 768-69.

[15]*Loving v. Virginia,* 388 U.S. 1 (1967); *Zablocki,* 434 U.S. 374.

[16]434 U.S. at 383 (quoting *Loving,* 388 U.S. at 12 (quoting *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942))).

our society. . . . Surely, a decision to marry and raise the child in a traditional family setting must receive equivalent protection. And, if appellee's right to procreate means anything at all, it must imply some right to enter the only relationship in which the State of Wisconsin allows sexual relations legally to take place.[17]

The Supreme Court has made it clear that constitutional rights apply to children as well as adults.[18] In the case of *In re Gault,* the Court stated that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."[19] In *Planned Parenthood of Missouri v. Danforth,* the Court stated, "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."[20] However, the Court has also recognized that states have the power to make adjustments in the constitutional rights of minors.[21]

Marriage is the cornerstone of the family and our civilization.[22] As marriage comprises the most sacred of relationships,[23] the decision of whom and when to marry is highly personal, often involving reasons that are complex and vary from individual to individual. The decision to marry should rest primarily in the hands of the individual, with little government interference.[24] As a society, we recognize that reasonable constraints on the right to marry are appropriate, especially when the marriage involves a minor.[25]

There is no one set of criteria that can be set forth as a litmus test to determine if a marriage will be successful. Neither is there a litmus test to determine whether a person is mature enough to enter a marriage. Age alone is an arbitrary factor. The Nevada Legislature recognized that although most fifteen-year-olds would

[17]*Id.* at 386 (citations omitted).

[18]*In re Gault,* 387 U.S. 1 (1967).

[19]*Id.* at 13.

[20]428 U.S. 52, 74 (1976).

[21]*Ginsberg v. New York,* 390 U.S. 629, 638 (1968).

[22]*Zablocki,* 434 U.S. at 384.

[23]*Griswold v. Connecticut,* 381 U.S. 479, 486 (1965).

[24]*See Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 639-40 (1974).

[25]The United States Supreme Court has made clear that states can regulate marriage with respect to bigamy, incest, or underage marriages. *See Zablocki,* 434 U.S. at 392 (Stewart, J., concurring); *id.* at 399 (Powell, J., concurring); *id.* at 404 (Stevens, J., concurring).

not be mature enough to enter into a marriage, there are exceptions. Nevada provided for the exceptional case by allowing a fifteen-year-old to marry if one parent consents and the court approves. The statute provides a safeguard against an erroneous marriage decision by the minor and the consenting parent, by giving the district court the discretion to withhold authorization if it finds that there are no extraordinary circumstances and/or the proposed marriage is not in the minor's best interest, regardless of parental consent. The statute strikes a balance between an arbitrary rule of age for marriage and accommodation of individual differences and circumstances.

Consent of both parents is by no means a constitutional requirement for even the most important of decisions regarding minors, as Kirkpatrick alleges. In *Hodgson v. Minnesota*, in declaring a two-parent notification requirement for an abortion unconstitutional, the United States Supreme Court stated:

> It is equally clear that the requirement that *both* parents be notified, whether or not both wish to be notified or have assumed responsibility for the upbringing of the child, does not reasonably further any legitimate state interest. . . . In the ideal family setting, of course, notice to either parent would normally constitute notice to both. A statute requiring two-parent notification would not further any state interest in those instances. In many families, however, the parent notified by the child would not notify the other parent. In those cases the State has no legitimate interest in questioning one parent's judgment that notice to the other parent would not assist the minor or in presuming that the parent who has assumed parental duties is incompetent to make decisions regarding the health and welfare of the child.
>
> Not only does two-parent notification fail to serve any state interest with respect to functioning families, it disserves the state interest in protecting and assisting the minor with respect to dysfunctional families.[26]

The *Hodgson* Court went on to hold that two-parent notification "is an oddity among state and federal consent provisions governing the health, welfare, and education of children," such as enlisting in the armed services, obtaining a passport, participating in medical research, or submitting to any surgical or medical procedure.[27] When the state requires the consent of only one parent for significant events in a minor's life, the state implicitly recognizes the common reality of modern families. A significant percentage of children under the age of eighteen live in

[26]497 U.S. 417, 450 (1990).

[27]*Id.* at 454.

single-parent households.[28] Furthermore, single-parent consent to a minor's marriage is common throughout the country, and none of these laws has been declared unconstitutional on the basis that the other parent did not consent.[29] Nor have any courts held that a non-consenting parent's due process rights have been violated by failure to notify that parent of a child's desire to marry, with the consent of one parent. Kirkpatrick is making a unique argument without the support of case law.

Kirkpatrick asserts that he has been deprived of his fundamental right to the parent-child relationship, like the parents whose parental rights have been terminated. Contrary to what is apparently Kirkpatrick's view, the parental relationship does not end with the emancipation of a child. The only right that he has lost by his daughter's emancipation is his right to exercise legal control over his daughter during her minority. He still has all the other legal and social attributes of parenthood. Kirkpatrick retains the legal rights of inheritance, as well as all the bonds of love, care, companionship, and influence that any parents have after emancipation of their children. How he chooses to foster those bonds is up to him.

The Supreme Court has held that the usual standard for analyzing a substantive due process challenge to the constitutionality of a state statute that impinges on a fundamental constitutional right is whether the statute is narrowly tailored so as to serve a compelling interest.[30] In family privacy cases involving competing interests within the family, however, the Court has deviated from the usual test.[31] Various child rearing and custody cases demonstrate the Court's application of a more flexible ''reasonableness'' test, which ''implicitly calibrat[es] the level of scrutiny in each case to match the particular degree of intrusion upon the parents' interests.''[32]

---

[28]*See Troxel,* 530 U.S. at 64 (noting that in 1996, twenty-eight percent of all children in the United States under the age of eighteen lived with only one parent).

[29]*See, e.g.,* Cal. Family Code § 302 (West 1994); *see also* 1 Kramer, *supra* note 3, § 14.04, at 596.

[30]*See Washington v. Glucksberg,* 521 U.S. 702, 721 (1997); *accord Lulay v. Lulay,* 739 N.E.2d 521, 529 (Ill. 2000); *Wolinski v. Browneller,* 693 A.2d 30, 37 (Md. Ct. Spec. App. 1997); *see also* John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 10.6(a), at 348 (5th ed. 1995).

[31]*See generally* David D. Meyer, *The Paradox of Family Privacy,* 53 Vand. L. Rev. 527 (2000).

[32]*Id.* at 546; *see also* David D. Meyer, Lochner *Redeemed: Family Privacy After* Troxel *and* Carhart, 48 UCLA L. Rev. 1125 (2001) (examining the Supreme Court's application of a ''reasonableness'' test when balancing competing liberty interests in family-privacy jurisprudence); David D. Meyer, *Family Ties: Solving the Constitutional Dilemma of the Faultless Father,* 41 Ariz. L. Rev. 753, 838-43 (1999) (discussing whether the Supreme Court in family privacy cases applies a strict scrutiny standard or a reasonableness test).

In this case, we have the interest of the daughter in marriage and the interest of the mother in her daughter's welfare and happiness balanced against the father's interest in the legal control of his daughter for the remainder of her minority. NRS 122.025 strikes an appropriate balance between the various interests. As the United States Supreme Court stated in *Hodgson,* "'[n]or can any state interest in protecting a parent's interest in shaping a child's values and lifestyle overcome the liberty interests of a minor acting with the consent of a single parent or court.'"[33] While the right involved in this case is different, the *Hodgson* language illustrates the fact that there is clearly a limit on a single parent's control. The state has a right to limit the right of a parent if the limitation strikes an appropriate balance between the various interests at stake. As the Supreme Court said in *Michael H. v. Gerald D.*[34] in criticizing the dissent:

> It seems to us that [the dissent] reflects the erroneous view that there is only one side to this controversy—that one disposition can expand a "liberty" of sorts without contracting an equivalent "liberty" on the other side. Such a happy choice is rarely available. . . . Our disposition does not choose between these two "freedoms," but leaves that to the people of California.

Nevada has an interest in promoting stable marriages, while not treating minors arbitrarily by denying them a right based solely on a few months' difference in age. In fact, at common law, although minors could not enter other contracts, they were allowed to contract for marriage at age twelve for a girl and age fourteen for a boy.[35] Other state legislatures are free to set a different public policy for their states,[36] but that does not invalidate Nevada's public policy.

Kirkpatrick alleges that even if NRS 122.025 does not infringe on his substantive constitutional rights, it still infringes on his procedural due process rights by depriving him of notice and the opportunity to be heard on whether his daughter should be allowed to marry. The United States Supreme Court made it clear in *Hodgson* that a two-parent notification requirement when a minor seeks to enforce a right is not necessarily required.[37] The Court said that even though the other parent may have an interest in the

---

[33]497 U.S. at 452.

[34]491 U.S. 110, 130 (1989).

[35]*State v. Wade,* 766 P.2d 811, 815 (Kan. 1989) (noting that the common law still controls the minimum age for marriage).

[36]*See, e.g., Moe v. Dinkins,* 533 F. Supp. 623 (S.D.N.Y. 1981), *aff'd,* 669 F.2d 67 (2d Cir. 1982).

[37]497 U.S. at 450.

minor's decision and full communication is desirable, "[t]he State has no more interest in requiring all family members to talk with one another than it has in requiring certain of them to live together."[38]

The usual test that is cited to determine whether a litigant's procedural due process rights have been violated is set forth in *Mathews v. Eldridge* in the context of the deprivation of a property right.[39] The factors the United States Supreme Court considers are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including . . . the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[40]

This test is really more appropriate in the context of the government deprivation of property rather than in the context of an intrafamily dispute; however, applying the test still does not invalidate Nevada's procedures.

Kirkpatrick does have an interest in the control of his daughter, but her emancipation merely means that he no longer has the force of the law to enforce his rules and restrictions. He still has all the moral and social authority that comes with parenthood. Kirkpatrick has basically suffered no injury. The cases which have found that the parent has a right to be heard have all been in the context of a party outside the family seeking to deprive parents of control, not in the context of family members with competing interests.[41] In the one context in which a right of parental notification regarding an important decision by a child has been litigated, the United States Supreme Court has concluded that the parent had no such right.[42]

Under NRS 122.025, the state has provided the protections against an erroneous outcome by requiring one parent's consent, as well as a judicial determination of extraordinary circumstances, and the best interest of the minor. Just because a litigant is unhappy with the outcome, does not mean that he has a right to be heard when appropriate safeguards are in place. The state also has an interest in fostering appropriate marriages and tailoring its statutes in

[38]*Id.* at 452.

[39]424 U.S. 319, 335 (1976).

[40]*Id.* at 335.

[41]*Troxel,* 530 U.S. 57; *Santosky,* 455 U.S. 745; *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Meyer v. Nebraska,* 262 U.S. 390 (1923).

[42]*Hodgson,* 497 U.S. 417.

such a way as to take into account the individual variations in maturity, rather than just setting an arbitrary rule of age. Requiring additional notices and hearings would be a financial and administrative burden, which would hinder the state policy of fostering appropriate marriages. Balancing the interests of the state and the minimal deprivation to Kirkpatrick, it cannot be said that Kirkpatrick has been deprived of procedural due process under either the United States or Nevada Constitutions.

Kirkpatrick also seeks to annul the marriage of his daughter. NRS 125.320(2) provides that a marriage obtained without parental consent may only be annulled ''upon application by or on behalf of the person who fails to obtain such consent.'' Thus, Kirkpatrick has no standing to annul his daughter's marriage.

For the foregoing reasons, we find that NRS 122.025 is constitutional, and therefore, the petition for a writ of mandamus is denied.[43]

ROSE and MAUPIN, JJ., and YOUNG, Sr. J., concur.

AGOSTI, C. J., with whom LEAVITT and BECKER, JJ., agree, dissenting:

I dissent. The majority has reached beyond the relief sought in the petition for rehearing. In her petition, SierraDawn admits that this court, in its earlier decision,[1] ''wisely added procedural due process requirements to the statute and otherwise clarified the requirements for minors under the age of 16 wanting to marry. These requirements are appropriate and reasonable and provide the district courts with needed guidance.'' Moreover, SierraDawn contends that ''Kirkpatrick should be given the opportunity to be heard, [she] should be given an opportunity to be heard, and the district court should be given the opportunity to hear the evidence and make a decision'' as to whether the marriage is void. SierraDawn simply asks that this court order a hearing so that she has an opportunity to establish that marriage is in her best interests and that her marriage should not be declared void. Thus, the *only* issue raised on rehearing is whether the district court should be required to conduct a new hearing. The majority opinion ignores the relief requested in the petition for rehearing and treats this case as

---

[43]THE HONORABLE CLIFF YOUNG, Senior Justice, having participated in our prior decision of this matter and in our deliberations on rehearing as a Justice of the Nevada Supreme Court, was assigned to participate in the decision on rehearing following his retirement. Nev. Const. art. 6, § 19; SCR 10. THE HONORABLE MARK GIBBONS, Justice, did not participate in the decision of this matter.

[1]*Kirkpatrick v. Dist. Ct.*, 118 Nev. 233, 43 P.3d 998 (2002).

though it were before the court for the first time. According to the majority, the sole issue before the court is whether NRS 122.025, the marriage consent statute, is constitutional.

In determining that the statute is constitutional, the majority purports to balance the competing interests of SierraDawn, Karay, and Kirkpatrick, but the majority fails to balance, or even appropriately recognize, the interests at stake. Marriage is a civil contract between parties with the capacity to contract.[2] A child under the age of eighteen has no capacity to contract absent some limited statutory authority.[3] The majority acknowledges that states can place limitations on a minor's ability to marry, yet in the same breath suggests that a minor has a fundamental liberty interest in marriage. But the Supreme Court has never declared or suggested that a minor has a fundamental right to marry. And Nevada's statute, even if deemed constitutional, recognizes that a minor has no independent constitutional right to marry—the minor must obtain parental and court consent or have no right at all.

This limited statutory right cannot be equated with an adult's fundamental marriage right. Even if a child could be deemed to have some constitutionally recognized interest in marriage, the United States Supreme Court has pointed to the following three reasons why children's constitutional rights are not equivalent to those of adults: "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing."[4] Our legal system recognizes time and time again that children are not capable of making all the decisions necessary to lead an adult life and are not vested with the same spectrum of constitutional rights afforded adults.[5]

The majority misses the mark with its citation to an abortion case, *Hodgson v. Minnesota*.[6] *Hodgson* concluded that two-parent

[2]*State Farm Fire & Cas. Co. v. Platt*, 4 F. Supp. 2d 399, 404 (E.D. Pa. 1998).

[3]*See, e.g.,* NRS 129.010 (providing that all persons who are eighteen years old and without legal disability, or who have been declared emancipated, are capable of entering into contracts and are held to be of lawful age).

[4]*Bellotti v. Baird*, 443 U.S. 622, 634 (1979).

[5]*See,, e.g., Goss v. Lopez*, 419 U.S. 565, 590-91 (1975) (Powell, J., dissenting) (stating the importance of "the experience of mankind, as well as the long history of our law, recognizing that there *are* differences which must be accommodated in determining the rights and duties of children as compared with those of adults. Examples of this distinction abound in our law: in contracts, in torts, in criminal law and procedure, in criminal sanctions and rehabilitation, and in the right to vote and to hold office."); *Ginsberg v. New York*, 390 U.S. 629 (1968) (upholding criminal statute that prohibited sale of obscene materials to minors when challenged under the First Amendment); *Prince v. Massachusetts*, 321 U.S. 158 (1944) (upholding prohibition on child labor when challenged on First Amendment free exercise grounds).

[6]497 U.S. 417 (1990).

consent is unconstitutional when a minor seeks to enforce her right
to obtain an abortion. Here, SierraDawn is not enforcing an abor-
tion right, or, for that matter, any fundamental right as a minor. A
minor's right to have an abortion and the limited right to marry in-
volve entirely different considerations. As the Supreme Court has
aptly observed: "The abortion decision differs in important ways
from other decisions that may be made during minority. . . . The
pregnant minor's options are much different from those facing a
minor in other situations, such as deciding whether to marry."[7] A
minor's abortion decision concerns recognized privacy interests
and must be made in a very limited period of time: "[a] pregnant
adolescent . . . cannot preserve for long the possibility of aborting,
which effectively expires in a matter of weeks from the onset of
pregnancy."[8] The privacy and time concerns present in any abortion
decision are absent in a decision to marry. A minor's desire to
marry implicates contracts, parental control and the adult responsi-
bilities that arise in a marital relationship. If marriage is delayed,
the minor may marry later, if she and her intended spouse continue
to want such a relationship. Accordingly, with respect to abortion
decisions, *unlike* other situations, a state may require parental noti-
fication or consent only if it also provides an adequate procedure
for the minor to bypass her parent or parents and go directly to a
court for permission to have an abortion.[9]

In *Moe v. Dinkins*,[10] a federal district court rejected a constitu-
tional challenge brought by a class of minors, to New York's dual-
parent marriage consent law. That court determined that the mi-
nors' reliance on abortion and contraception cases was misplaced.[11]
The court recognized that "[g]iving birth to an unwanted child in-
volves an irretrievable change in position for a minor as well as for
an adult, whereas the temporary denial of the right to marry does
not."[12] A minor's inability to marry is not a total deprivation of a
marriage right, but merely a delay. Thus, SierraDawn's limited
marriage interest cannot be equated with a minor's interest in ob-
taining an abortion.

Further, *Hodgson* was an extremely divided opinion. The ma-
jority fails to recognize this important feature of the case. Although
five members of the Court concluded that a two-parent consent re-
quirement was unconstitutional, in large part because many
American families have only one involved parent, five justices
also concluded that the abortion statute's bypass procedures ren-

---

[7]*Bellotti,* 443 U.S. at 642.

[8]*Id.*

[9]*Id.* at 644, 647-48.

[10]533 F. Supp. 623 (S.D.N.Y. 1981), *aff'd,* 669 F.2d 67 (2d Cir. 1982).

[11]*Id.* at 630.

[12]*Id.*

dered any constitutional concerns about two-parent notification moot because the minor could avoid notifying one or both parents. In light of this split, the Supreme Court affirmed in its entirety the Eighth Circuit's judgment in the case.[13] The Eighth Circuit's judgment concluded that " '[c]onsidering the statute as a whole and as applied to all pregnant minors, the two-parent notice requirement does not unconstitutionally burden the minor's abortion right.' "[14]

The two-parent statute in *Hodgson,* moreover, required a different analytical framework than the marriage consent statute at issue in this case. The *Hodgson* Court took issue with the abortion statute because of the problems inherent in obtaining consent from both parents when one parent is unavailable, disinterested, or caused the pregnancy. Here, the marriage consent statute, which requires only one parent to consent, is constitutional on its face, but unconstitutional when applied to deprive, with absolutely no procedural safeguards, a parent of his fundamental liberty interest. That parent's consent is not the issue, for the district court must ultimately make the marriage determination. Instead, that parent's right to notice and to participate in the proceedings must be considered.

Unlike SierraDawn's limited marriage interest, Kirkpatrick's interest in parenting his teenage daughter, which includes participating in her important life decisions, is a fundamental liberty interest.[15] As the United States Supreme Court has recognized, "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."[16] A parent's protected interest does not end because of divorce or a child's development,[17] and parents do have

---

[13]*Hodgson,* 497 U.S. at 423.

[14]*Id.* at 433 (quoting *Hodgson v. Minnesota,* 853 F.2d 1452, 1464-65 (8th Cir. 1988)). Consequently, even if a two-parent abortion consent statute were at issue here, *Hodgson* would not mandate that we hold it unconstitutional.

[15]*See, e.g., Moore v. East Cleveland,* 431 U.S. 494, 499 (1977) (recognizing a " 'private realm of family life which the state cannot enter' " (quoting *Prince v. Massachusetts,* 321 U.S. 158, 166 (1944))); *Wisconsin v. Yoder,* 406 U.S. 205, 232 (1972) (acknowledging that parents have the primary role to nurture and raise their children); *Stanley v. Illinois,* 405 U.S. 645, 651 (1972) (recognizing interest of parent in companionship, care, custody and management of children); *Pierce v. Society of Sisters,* 268 U.S. 510, 535 (1925) (recognizing that parents have a duty to prepare children for life's obligations); *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923) (stating that due process protects parents' liberty interests in establishing a home and bringing up children).

[16]*Yoder,* 406 U.S. at 232.

[17]*See, e.g., Prisco v. U.S. Dept. of Justice,* 851 F.2d 93, 97 (3d Cir. 1988), *overruled on other grounds by Acierno v. Cloutier,* 40 F.3d 597 (3d Cir. 1994); *see generally* Margaret F. Brinig & F.H. Buckley, *Joint Custody: Bonding and Monitoring Theories,* 73 Ind. L.J. 393, 396 (1998) ("Joint cus-

the authority to control their children's associates.[18] Justice Stevens, in *Hodgson*, recognized that "the demonstration of commitment to the child through the assumption of personal, financial, or custodial responsibility may give the natural parent a stake in the relationship with the child rising to the level of a liberty interest."[19] Kirkpatrick is apparently a father who has been consistently eager to participate in his daughter's upbringing. Until SierraDawn was married, Kirkpatrick shared joint legal and physical custody of SierraDawn. He had the right to spend time with and provide guidance to his daughter, and the right to participate in the important decisions that would shape her life. Clearly, Kirkpatrick's interest in maintaining his parental relationship with his daughter warrants greater protection than fifteen-year-old SierraDawn's limited interest in her desire to marry her forty-eight-year-old guitar teacher.

The only way to balance the interests at issue here and ensure that the district court makes an informed decision is to require the district court to give interested and involved parents like Kirkpatrick notice and an opportunity to participate before making its decision. The majority's approach, which exalts a child's limited interest in marriage over a parent's constitutionally protected interest in raising the child, results in no balance at all—no recognition of Kirkpatrick's protected constitutional rights, no constitutionally mandated procedural safeguards and no requirement that extraordinary circumstances and best interests be determined.

The majority erroneously analyzes Kirkpatrick's procedural due process claim by misapplying the Supreme Court's three-part test. *Mathews v. Eldridge* sets forth the factors that must be considered:[20]

---

tody means more than a sharing of physical custody, as parents must share the responsibility for the child's upbringing. Both parents are to be consulted on major decisions, and each might veto the other's decisions." (footnote omitted)); Stephanie N. Barnes, Comment, *Strengthening the Father-Child Relationship Through a Joint Custody Presumption,* 35 Willamette L. Rev. 601, 612 (1999) (observing that joint legal custody allows parents to share major decisions concerning the child's upbringing).

[18]*See Troxel v. Granville,* 530 U.S. 57, 78 (2000) (Souter, J., concurring) ("The strength of a parent's interest in controlling a child's associates is as obvious as the influence of personal associations on the development of the child's social and moral character. Whether for good or for ill, adults not only influence but may indoctrinate children . . . ."); *Griggs v. Barnes,* 78 So. 2d 910, 916 (Ala. 1955) (stating that " ' "[t]he essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion" ' " (quoting *Guardianship of Smith,* 255 P.2d 761, 762 (Cal. 1953) (quoting *Lerner v. Superior Court,* 242 P.2d 321, 323 (Cal. 1952)))).

[19]*Hodgson,* 497 U.S. at 446 (opinion of Stevens, J.).

[20]424 U.S. 319, 335 (1976).

First, the private interest that will be affected by official action; second, the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail.

Initially, the majority, in trying to avoid the obvious outcome in a *Mathews* analysis, incorrectly states, without citation, that the *Mathews* test is "really more appropriate in the context of the government deprivation of property rather than in the context of an intra-family dispute."[21] This court has consistently relied on *Mathews* when analyzing procedural protections when a liberty interest has been impinged upon.[22] Other courts, including the Supreme Court, have applied *Mathews* when liberty interests were involved.[23]

The majority then finds a creative, result-oriented path to reach its conclusion that no procedural due process violation occurred in this case. It characterizes Kirkpatrick's interest as one of "control" and states that he "has basically suffered no injury" because he retains the (rather obtuse) "moral and social authority that comes with parenthood."[24] Kirkpatrick has maintained an active role in SierraDawn's life, and, until her marriage, their relationship was a continuous one. Because Kirkpatrick consistently demonstrated paternal commitment to SierraDawn, through custody and visitation, he has a fundamental liberty interest in the parent-child relationship.[25] Although the majority concludes that Kirkpatrick has suffered no real injury, he has lost his daughter. He no longer has the right to see her, to care for her, to have her live with him, or to participate in any of her important life decisions. How his interest in his daughter's growth and development, and his concomitant loss of her companionship, can be characterized as "minimal" is bewildering.

The majority then completely dodges the second *Mathews* factor by stating that "the state has provided the protections against an erroneous outcome by requiring one parent's consent, as well as a ju-

---

[21]*See* majority opinion *ante* p. 76.

[22]*See Matter of Parental Rights as to Daniels,* 114 Nev. 81, 953 P.2d 1 (1998) (parental rights termination); *Minton v. Board of Medical Examiners,* 110 Nev. 1060, 881 P.2d 1339 (1994) (right to practice medicine); *State Bar of Nevada v. Claiborne,* 104 Nev. 115, 756 P.2d 464 (1988) (right to practice law); *Tarkanian v. Nat'l Collegiate Athletic Ass'n,* 103 Nev. 331, 741 P.2d 1345 (1987) (employment and reputation).

[23]*See* John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 13.9, 599-606 (6th ed. 2000).

[24]*See* majority opinion *ante* p. 76.

[25]*See Hodgson,* 497 U.S. at 445-46.

dicial determination of extraordinary circumstances, and the best interest of the minor.''[26] The majority does not even mention the risk that Kirkpatrick's interest was erroneously deprived and what probable value additional safeguards would have provided. The focus of this second factor is the risk that Kirkpatrick was erroneously deprived of his parental interest. Given the utter lack of procedural protections here, the risk that Kirkpatrick was improperly deprived of his parental interest is great. He was not even given notice of SierraDawn's marriage, much less an opportunity to be heard. Moreover, procedural safeguards would not only have enhanced the likelihood that Kirkpatrick's rights as SierraDawn's parent were not impeded without his knowledge, but also would have ensured that SierraDawn's best interests were addressed, as required by the statute.

Finally, and ironically, the majority concludes that ''[r]equiring additional notices and hearings would be a financial and administrative burden, which would hinder the state policy of fostering appropriate marriages.''[27] The majority puts the cart before the horse. If the state's policy is to foster *appropriate* marriages, then requiring proper notice and a meaningful hearing in cases such as this would assist the state in determining whether the marriage *is* appropriate. The district court, in deciding whether to authorize the minor's marriage, is required by Nevada's statute to determine whether extraordinary circumstances exist and if the minor's best interests are served by the proposed marriage. Suggesting that the court would be financially or administratively burdened by fully performing its task is ridiculous.

The *Mathews* factors all point to the same result. Under the circumstances presented here, Kirkpatrick was entitled to notice and a meaningful opportunity to be heard before the district court determined that SierraDawn could marry. Kirkpatrick was denied such protections, however, and his due process rights were violated.

The majority proclaims that by giving the district court the discretion to withhold authorization, the statute provides safeguards against erroneous marriages. According to the majority, the statute strikes a balance between the arbitrary rule of age and an individual's choice to marry. Age is not arbitrary, however. The legislature has delineated various requirements that minors must meet in order to marry, based on age.[28] For a fifteen-year-old child, the legislature requires the district court to find extraordinary circumstances

[26]*See* majority opinion *ante* p. 76.

[27]*See id.* at 77.

[28]*See* NRS 122.020(1) (marriage at eighteen years old); NRS 122.020(2) (marriage at least sixteen years old); NRS 122.025 (marriage under sixteen years of age).

and that the marriage serves the child's best interests. The majority opinion is necessarily devoid of any discussion concerning the district court's finding of extraordinary circumstances or that the proposed marriage was in SierraDawn's best interests, since no such circumstances existed. The district court did not even engage in this analysis. Thus, I do not see how the statute provided SierraDawn any protection.

The marriage consent statute includes a two-tiered approach: if one parent consents, then, "[i]n extraordinary circumstances, a district court may authorize the marriage of a person less than 16 years of age if the court finds that . . . [t]he marriage will serve the best interests of such person."[29] Moreover, pregnancy alone does not establish that the minor's best interests will be served by marriage, nor is pregnancy required by the court as a condition necessary for its marriage authorization.[30] Thus, under the statute, any judicial authorization must be based on the court's determination that extraordinary circumstances warrant the marriage, and that the minor's best interests will be served. If pregnancy, in and of itself, does not demonstrate that the minor's best interests rest in marriage, then "extraordinary circumstances" and "best interests" must mean that the circumstances justifying the marriage are extreme and unusual.

According to the documents before us, the district court had only Karay's summary affidavit before it when it made its decision. The district court apparently relied exclusively on Karay's observations that SierraDawn and Crow had "very real life plans," and that Karay has "seen no other couple so right for each other." Surely these cursory observations neither establish extraordinary circumstances, nor serve to demonstrate how the marriage is in SierraDawn's best interests. Since Karay was not personally present before the district court when it granted the petition to marry, the court did not have an opportunity to investigate her credibility or motives. And, although there is an approximate thirty-year disparity between SierraDawn and Crow, and SierraDawn was only fifteen years old at the time, the district court failed to ask Karay more specifically why it was in SierraDawn's best interests to marry Crow.

Even worse, the district court signed a basic form order granting the petition to marry. This form simply stated that "good cause exists under the Statutes of Nevada for the marriage of applicant to Sauren Crow." The court did not interview the parties or conduct any meaningful hearing. Kirkpatrick was not even given notice of the proceedings, much less an opportunity to be heard on whether extraordinary circumstances existed or if SierraDawn's

[29]NRS 122.025(1), (2).

[30]NRS 122.025(2).

best interests would be served. The majority puts a great deal of faith in the district court's form order; it, along with Karay's summary affidavit, represents the whole of SierraDawn's statutory "protection."

As the majority would have it, under Nevada's marital consent statute, a father could permit his thirteen-year-old son to marry the son's forty-two-year-old soccer coach, and the boy's mother would have nothing to say about it. The mother, according to the majority, would have lost nothing but a desire to "control" her son.

Now, one parent, without the other parent's knowledge, can turn what would otherwise be a crime worthy of headline news into state sanctioned, constitutionally protected conduct. I would point out that the Utah Court of Appeals recently upheld the conviction of a thirteen-year-old girl's father, after concluding that the evidence supported a finding that the father knew and intended that the daughter have sexual intercourse with his forty-eight-year-old friend, the daughter's alleged "husband."[31] There, the father conducted a ceremony to marry his young daughter to his friend. The father instructed the daughter that as a wife, she was expected to engage in sexual relations with her husband.[32] Eventually, the daughter left the relationship and informed a law enforcement officer of the marriage and her sexual relations with the "husband."[33] The father was arrested and convicted, after a jury trial, of three counts of child rape as an accomplice.[34] The "husband" was charged with child rape and fled the jurisdiction.[35] The father would have been completely protected from serious criminal liability, while at the same time achieving his objective of a consummated marriage for his daughter, had he simply brought her to Nevada and executed an affidavit, as Karay did, along with a petition to permit his daughter to marry.

The majority also fails to address the fact that Nevada's marriage consent statute includes no minimum age for marriage.[36] Under the statute, an eight-year-old child could marry a forty-year-old adult, with one parent's consent and the district court's authorization. If one parent petitioned, and a court, with no meaningful review of the case, authorized the marriage (as occurred here), then under the majority's view, absolutely no one would be in a position to challenge it.

The majority insists that the intent of the marriage consent statute is to delineate the circumstances under which a minor under sixteen

---

[31]*State v. Chaney,* 989 P.2d 1091 (Utah Ct. App. 1999).

[32]*Id.* at 1094.

[33]*Id.*

[34]*Id.* at 1095.

[35]*Id.* at 1102.

[36]*See* NRS 122.025.

years of age may marry. Interestingly, the legislative history reveals that the actual impetus for passing the statute was money. In 1977, when the Nevada Legislature amended the marriage consent statute to allow a minor under the age of sixteen to marry with the consent of only one parent, the legislature made clear that the decision was driven by the Nevada Wedding Association's successful lobbying efforts.[37] Apparently, during the late 1970s, because Nevada required both parents to consent to the marriage of a minor under sixteen, a small percentage of non-residents who came to Nevada to get married were turned away because they traveled with only one parent, or presented the signature of only one parent.[38] The legislature's decision to amend the statute was determined by economics and certainly was not motivated by an attempt to balance the interests of parents and minor children. I seriously question whether the legislature would have passed the current statute had it foreseen the majority's decision in this case.[39] Under these circumstances, I cannot understand how the majority can uphold the district court's marriage authorization.

[37]*See* Hearing on A.B. 298 Before the Senate Judiciary Comm., 59th Leg. (Nev., March 18, 1977).

[38]Hearing on A.B. 298 Before the Assembly Commerce Comm., 59th Leg. (Nev., February 23, 1977).

[39]Other states have enacted statutes that are in keeping with due process requirements. Some require both parents to consent to a minor child's marriage, if both parents are available. *See, e.g.,* Ga. Code Ann. § 19-3-37(b) (1999); Iowa Code § 595.2(4)(a) (2001); La. Child. Code Ann. art. 1545(A) (1995); *see also* N.J. Stat. Ann. § 37:1-6 (West 2002) (requiring that both parents consent unless one of them is "of unsound mind"). Another state requires that the court appoint an attorney guardian ad litem for the minor and consider the opinion of both parents when determining whether marriage is in the child's best interests. *See, e.g.,* N.C. Gen. Stat. § 51-2.1(a)(1) (2002). Indiana requires that both parents receive notice of the hearing regarding marriage authorization, if both parents are involved with the child and are competent to testify. Ind. Code § 31-11-1-6(2) (1997).