141 Nev., Advance Opinion 46

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE PARENTAL RIGHTS AS TO S.A.T., A MINOR CHILD. | No. 89258 |
| MOLLY L., Appellant, vs. BRYAN T., Respondent. | **FILED** OCT 02 2025 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY CHIEF DEPUTY CLERK |

Appeal from a district court order denying a petition to terminate respondent's parental rights. Eighth Judicial District Court, Family Division, Clark County; Heidi Almase, Judge.

*Affirmed.*

Burger, Meyer & D'Angelo, LLP, and Curtis R. Rawlings, Las Vegas, for Appellant.

Roberts Stoffel Family Law Group and Amanda M. Roberts, Las Vegas, for Respondent.

BEFORE THE SUPREME COURT, HERNDON, C.J., and PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

In Nevada, a petition to terminate parental rights may be filed by the state or another entity or individual, including another parent.

25- 43008

When the state files such a petition, its interest is focused on the child's safety, protection, and stability. This can be in stark difference to the motivations behind a petition to terminate parental rights filed by one parent against another parent.

In this case, a parent asked the district court to sever the other parent's parental rights where the child was safe and well cared for, but the child had not had contact with the other parent for several years. That lack of communication can establish that the parent has made only token efforts to communicate with and support the child, which is a ground for parental fault that may support termination of a parent's rights. Even so, this parental-fault ground poses unique concerns when the petition has been initiated by a parent who has custody of and control over the child. Considering that context, we now hold that terminating parental rights in a private termination action based solely on the parental-fault ground of token efforts to communicate with the child is disfavored. We further hold that a parent does not admit a parental-fault ground simply by failing to oppose it when responding to the termination petition. Because the district court correctly found that appellant had not proven the alleged grounds of parental fault by clear and convincing evidence, we affirm the district court's order denying the private petition to terminate respondent's parental rights.

## FACTS AND PROCEDURAL HISTORY

Appellant Molly L. and respondent Bryan T. are the natural parents of S.A.T. and K.W.T. The parties divorced in 2014. They stipulated to joint legal custody and to Molly having primary physical custody of the children.

This arrangement worked well initially, and Bryan remained involved in the children's lives. But in 2016, Bryan exhibited various

mental health issues and was treated by several mental health facilities. During the height of Bryan's mental health crisis, in July 2016, he got in an altercation with Molly's wife when picking the children up for visitation. Bryan sped off with the children in his vehicle. Knowing that he needed medical help, Bryan drove with the children to the hospital, where he had a significant mental health episode. Hospital staff had to physically remove S.A.T. from Bryan's hands. The children were returned to Molly. Following that incident, Molly obtained a temporary protective order barring Bryan from contacting Molly or the children for 30 days.

Molly then sought to extend the TPO. Bryan, who had been hospitalized for several months following the July incident, did not attend the hearing on the extended TPO. A district judge granted that request on September 30, 2016. The extended TPO required Bryan to stay away from Molly and the children until July 18, 2017, or until Bryan "undergoes a psychological evaluation" by a licensed psychologist and completes psychological counseling to ensure he can safely be around the children. With respect to the evaluation and counseling requirements, the extended TPO provided that they "should be significant and should address [Bryan]'s state of mind . . . and what he is doing on a regular basis to treat his bi-polar disorder." But the extended TPO left the door open for Bryan to seek supervised visitation by contacting Molly's counsel, provided that Bryan first sought available treatment.

Bryan was discharged from the hospital later in 2016. At that point, Bryan went to stay with his mother in Kansas for a few months. Upon returning to Nevada in early 2017, Bryan learned that Molly was garnishing his retirement account to satisfy child support arrearages that had accrued during 2016. The garnishment was the result of a child support action Molly initiated. According to Bryan, he also learned about the

extended TPO for the first time from a police officer.[1] Fearing that he could be held in contempt for violating the extended TPO, Bryan did not try to contact Molly or the children. Bryan later testified, however, that he tried to get help to reestablish visitation with the children over the next several years. In particular, he attended multiple "Ask-a-Lawyer" presentations in hopes of getting assistance, but he was left with the impression that he needed to hire an attorney. Bryan testified that he could not afford to do so. Bryan also tried to seek mediation through the child support action that Molly had initiated. That effort was unsuccessful. During that time, Bryan had no communication or visitation with the children. Bryan was able, however, to reestablish contact with Molly's adult child, Zachary. Although Zachary and Bryan are not biologically related, Bryan helped raise Zachary and was initially allowed to have visitation with Zachary following Bryan and Molly's divorce.

Aside from the extended TPO, Molly took other steps to prevent Bryan having contact with the children. For example, Molly did not allow the children to ride the bus to school or have after-school jobs out of fear that Bryan might contact or try to take the children. Molly also cut off all ties to Bryan's mother. And by 2019, Molly had moved. She notably did not update her address in the child support action, resulting in the closure of that action.

In 2021, Bryan received an inheritance. With the new financial resources, Bryan hired an attorney in hopes of resuming visitation with the children. Upon counsel's advice, Bryan reopened the child support action and made a lump-sum payment to cover the arrearages that had accrued

---

[1]A certificate of service indicates the extended TPO was mailed to Bryan. But Bryan testified that he did not see a copy of the extended TPO until 2021, when his attorney reviewed it with him.

since the action was closed. Bryan also obtained a psychological evaluation and counseling as outlined in the extended TPO. Shortly after Bryan provided proof of treatment to Molly, she filed a petition to terminate Bryan's parental rights as to K.W.T. and S.A.T. K.W.T. emancipated during the proceedings and later committed suicide. As a result, the petition proceeded only as to S.A.T.

At the evidentiary hearing, the doctor who evaluated Bryan testified that Bryan's mental health issues were under control, that Bryan had not had any manic episodes since 2016, and that the doctor had no concerns about Bryan's mental health. Zachary also testified on Bryan's behalf. Both Bryan and Zachary testified that Molly did not inform either of them about K.W.T.'s death and they only learned that K.W.T. had died because of information they saw online. After the evidentiary hearing, the district court denied the petition, finding that Molly did not demonstrate any parental-fault ground. Molly appeals.

## DISCUSSION

A party seeking to terminate parental rights bears the burden to demonstrate, by clear and convincing evidence, at least one ground of parental fault and that termination is in the child's best interest. NRS 128.105(1); *In re Parental Rts. as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762 (2006). Because the district court's decision rests on Molly's failure to demonstrate parental fault, we necessarily focus on only that part of the inquiry. In doing so, we review questions of law de novo and the district court's factual findings for substantial evidence. *In re Parental Rts. as to A.L.*, 130 Nev. 914, 918, 337 P.3d 758, 761 (2014).

*The district court properly found no grounds of parental fault*

Molly argues the district court abused its discretion by failing to find the parental-fault grounds of abandonment, neglect, and token

efforts. In particular, Molly alleges that Bryan has not seen or communicated with S.A.T. for several years and Bryan only paid child support through an enforcement action. Because the district court's findings are supported by substantial evidence, we are not convinced the district court erred in denying Molly's private termination petition. We therefore affirm.

*Abandonment*

Molly argues the evidence supports a presumption that Bryan abandoned S.A.T. Bryan argues that he rebutted the presumption of abandonment by demonstrating he lacked a settled purpose to forgo all parental rights as to S.A.T. We agree with Bryan.

"Abandonment of a child" is defined in NRS 128.012(1) as "any conduct . . . which evinces a settled purpose on the part of [a] parent[ ] to forego all parental custody and relinquish all claims to the child." "Intent is the decisive factor in abandonment and may be shown by the facts and circumstances." *In re Parental Rts. as to Montgomery*, 112 Nev. 719, 727, 917 P.2d 949, 955 (1996), *superseded by statute on other grounds as stated in In re Termination of Parental Rts. as to N.J.*, 116 Nev. 790, 798-99, 8 P.3d 126, 131-32 (2000). A parent may "demonstrate[ ] an intent not to abandon [their] child by providing financial support and/or by maintaining contact with the child." *Greeson v. Barnes*, 111 Nev. 1198, 1204, 900 P.2d 943, 947 (1995), *superseded by statute on other grounds as stated in In re N.J.*, 116 Nev. at 799-800, 8 P.3d at 132. But a rebuttable presumption of abandonment arises when a parent "leave[s] the child in the care and custody of another without provision for the child's support and without communication for a period of 6 months." NRS 128.012(2).

Substantial evidence supports the district court's finding that Bryan rebutted the presumption of abandonment.[2] Bryan testified that he believed he was not permitted contact with the children under the extended TPO until he underwent a psychological evaluation and treatment. *See In re Parental Rts. as to L.R.S.*, 140 Nev., Adv. Op. 62, 555 P.3d 1175, 1181 (2024) ("[W]e are of the opinion that a pro se and indigent parent's inability to navigate the judicial system cannot be used as support for the finding of abandonment."). Bryan also testified that he could not afford the type of psychological treatment required by the extended TPO or to retain an attorney until he received an inheritance in 2021. Even so, Bryan repeatedly sought free legal help, to the extent he could, to try to resume visitation. Bryan also unsuccessfully requested mediation to reestablish visitation through the child support enforcement action. Further, while Bryan's child support payments lapsed at times, Bryan paid arrears and even reopened the enforcement action on his own to resume making payments. *See Greeson*, 111 Nev. at 1207, 900 P.2d at 949 (Springer, J., dissenting) (stating that "parental rights should not be terminated for failure to make timely child support payments"). And as soon as Bryan could afford an attorney, he hired one and completed the psychological treatment required by the extended TPO. Given Bryan's efforts, we conclude the district court properly found that Bryan rebutted the presumption of abandonment.

---

[2]To the extent Bryan contends the presumption never applied, the record demonstrates there was a period of 6 months or more where he did not support or communicate with the children. Thus, the presumption applied. *See* NRS 128.012(2).

*Neglect*

Molly contends she offered clear and convincing evidence that Bryan neglected S.A.T. Specifically, Molly argues that Bryan did not provide S.A.T. with adequate food, clothing, shelter, education, or other moral support and love while S.A.T. was in Molly's care. Because S.A.T. was properly cared for by Molly while out of Bryan's care, we conclude the district court properly found that Bryan did not neglect S.A.T.

A "[n]eglected child" is one "[w]ho lacks the proper parental care by reason of" his or her parent's fault or habits, including by the parent's "refus[al] to provide proper or necessary subsistence, education, medical or surgical care, or other care necessary for the child's health, morals or well-being." NRS 128.014(1)-(2). We have held that "a finding of neglect must be based upon the treatment of the child while the parent has custody: neglect is not established when the child is left by the parent in an environment where the child is known to be receiving proper care." *Chapman v. Chapman*, 96 Nev. 290, 294, 607 P.2d 1141, 1144 (1980). To aid district courts in determining parental neglect, NRS 128.106(1) lists specific considerations that may diminish a parent's suitability. Further, "neglect must be serious and persistent and be sufficiently harmful to the child so as to mandate a forfeiture of parental rights." *Champagne v. Welfare Div. of Nev., State Dep't of Hum. Res.*, 100 Nev. 640, 648, 691 P.2d 849, 855 (1984), *superseded by statute on other grounds as stated in In re N.J.*, 116 Nev. at 799-800, 8 P.3d at 132-33.

The evidence is insufficient to establish neglect for three reasons. First, S.A.T. was in Molly's care, and Bryan believed Molly was meeting S.A.T.'s needs. Second, Bryan paid child support to assist Molly in meeting S.A.T.'s needs. Third, there was no evidence offered that Molly did not meet S.A.T.'s needs while S.A.T. was in Molly's care. Thus, there was

SUPREME COURT
OF
NEVADA

(O) 1947A

8

no evidence, much less clear and convincing evidence, that S.A.T. was a neglected child. Accordingly, we agree with the district court that Molly failed to demonstrate that Bryan neglected S.A.T.

*Token efforts*

Molly argues the district court erred by failing to find parental fault based on Bryan's mere token efforts to communicate with S.A.T. Molly contends this parental-fault ground was established by clear and convincing evidence because Bryan had not sent cards or gifts to, visited, or spoken with S.A.T. since July 2016. Having concluded Molly did not prove abandonment or neglect, the district court was reluctant to find token efforts as the only parental-fault ground to terminate Bryan's parental rights. We share that reluctance.

One of the grounds of parental fault listed in NRS 128.105(1)(b) is the parent's token efforts. Under the statute, this parental-fault ground is established when there are "[o]nly token efforts by the parent or parents: (I) [t]o support or communicate with the child; (II) [t]o prevent neglect of the child; (III) [t]o avoid being an unfit parent; or (IV) [t]o eliminate the risk of serious physical, mental or emotional injury to the child." NRS 128.105(1)(b)(6). Although token efforts is an independent ground of parental fault that may support the termination of parental rights, we are wary of its use in private termination actions.

A recent decision, *In re Parental Rights as to R.A.S.*, 141 Nev., Adv. Op. 20, 567 P.3d 337 (2025), discusses the differences between a state-filed petition to terminate parental rights and a private-party-filed petition to terminate parental rights. When the state seeks to terminate parental rights, the state is focused on the safety and stability of the child. *Id.* at 341. Whereas generally when a parent seeks to terminate another's parental rights, the child is already safe, and the moving parent thus may

SUPREME COURT
OF
NEVADA

(O) 1947A

be seeking termination for reasons other than the child's safety. *Id.* Thus, we warned district courts of the need to consider private termination petitions carefully to ensure the motivations behind the petition did not lead to an improper termination of a relationship between a parent and child. *Id.*; *see also In re Parental Rts. as to T.M.R.*, 137 Nev. 262, 265, 487 P.3d 783, 787 (2021) (recognizing "that terminating parental rights is tantamount to imposition of a civil death penalty" and requires close scrutinization of an order terminating parental rights (internal quotation marks omitted)); *In re Parental Rts. as to D.R.H.*, 120 Nev. 422, 426-27, 92 P.3d 1230, 1233 (2004) (explaining that a parent has a fundamental right and interest in parenting their child).

Now considering the application of the parental-fault ground of only token efforts to communicate or support the child in private termination actions, we conclude that termination based solely on this parental-fault ground is disfavored. First, token efforts to communicate or provide support are unlike any of the other categories of token efforts listed in NRS 128.105(1)(b)(6). Each of the other categories refers to independent grounds of parental fault that are included elsewhere in the statute. *Compare* NRS 128.105(1)(b)(6)(II) (token efforts to prevent neglect), *with* NRS 128.105(1)(b)(2) (neglect); *compare* NRS 128.105(1)(b)(6)(III) (token efforts "[t]o avoid being an unfit parent"), *with* NRS 128.105(1)(b)(3) (parental unfitness); *compare* NRS 128.105(1)(b)(6)(IV) (token efforts "[t]o eliminate the risk of serious physical, mental or emotional injury to the child"), *with* NRS 128.105(1)(b)(5) (risk of injury). Further, the other categories of token efforts directly relate to a parent's potential to place the child in unsafe conditions or situations and are aimed at ensuring that the parent does not get the opportunity to neglect the child, be an unfit parent, or place the child in a risky situation.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

The only parental-fault ground similar to token efforts "[t]o support or communicate with the child," NRS 128.105(1)(b)(6)(I), is abandonment, NRS 128.105(1)(b)(1). But, as we discussed above, abandonment can be supported only when the evidence shows that the parent has a *settled purpose* to forgo all parental rights or interests to the child. A "settled purpose" and "only token efforts" are contradictory terms. Accordingly, a concern that a parent is only making token efforts to support or communicate with a child can never support a finding of abandonment or even aim to ensure abandonment does not occur. By making a token effort to communicate or support the child, a parent is demonstrating an intention not to forgo all parental rights.

Second, an allegation of token efforts to communicate or provide support is rife for abuse in private termination actions. What qualifies as only token efforts to communicate or support a child will likely vary by parent. One parent's belief that more communication or support should be had by the other parent is not conclusive evidence supporting termination of all parental rights. Thus, while the moving parent may feel that the nonmoving parent's efforts to communicate or support the child have only been token, such assertions must be viewed with caution and considered in light of the status of the relationship between the parents.

In *Champagne*, we observed that "[w]hatever 'token efforts' might mean, we read NRS 128.105 as a whole to mean that termination of parental rights is to be based on substantial abandonment, neglect, parental unfitness or child abuse." 100 Nev. at 646, 691 P.2d at 854; *see, e.g.*, *In re D.R.H.*, 120 Nev. at 429-30, 432, 92 P.3d at 1235, 1237 (discussing a parent's lack of communication with his children in conjunction with findings of token efforts, neglect, and unfitness); *Drury v. Lang*, 105 Nev. 430, 432-33, 776 P.2d 843, 844-45 (1989) (discussing token efforts to

communicate in conjunction with abandonment); *Pyborn v. Quathamer*, 96 Nev. 145, 147, 605 P.2d 1147, 1148 (1980) (discussing a parent's token efforts to pay child support and "no real attempts to communicate with the child for a period of approximately ten months," which supported a finding of abandonment). That is to say, there must be "some specific fault or condition directly related to the parent[ ]" to justify severing the parent-child relationship. *Champagne*, 100 Nev. at 647, 691 P.2d at 854. In fact, we specified in *Champagne* that while a failure of parental adjustment is an independent parental-fault ground warranting termination, that ground was "fraught with difficulties," "must be applied with caution," and is generally disfavored as support for termination if it is the only parental-fault ground that can be established. *Id.* at 651-52, 691 P.2d at 857. We stated that "[c]aution must be exercised not to allow termination proceedings to be carried out absent a showing of unsuitability on the part of the parent by reason of the parent's fault or incapacitation. We must be extremely careful in concluding that a parent has crossed the line of unsuitability." *Id.* at 651, 691 P.2d at 857. Similar to *Champagne*, we now hold that in private termination actions, if the only supportable parental-fault ground is that a parent has only made token efforts to support or communicate with the child, termination is generally disfavored.

Here, we conclude that the district court properly determined that evidence of Bryan's token efforts to support or communicate with S.A.T., alone, were insufficient to establish parental fault warranting the termination of Bryan's parental rights. It is undisputed that Bryan did not have contact with S.A.T. for several years. Although that could establish only token efforts to communicate under NRS 128.105(1)(b)(6)(I), in the context of private termination proceedings, the court must consider the circumstances surrounding the lack of communication. For example, we

expressed concern with a finding of only token efforts to communicate "when [the parent was] effectively unable to locate [the] child." *In re R.A.S.*, 141 Nev., Adv. Op. 20, 567 P.3d at 345. As the district court recognized, this case presents a similar concern. Molly testified that she moved and did not share her new address with Bryan, the court, or the child support enforcement division. Molly also testified about her many efforts to hinder Bryan's access to S.A.T., including obtaining the extended TPO, cutting off S.A.T.'s contact with Bryan's extended family, moving the location of S.A.T.'s bedroom, and barring S.A.T. from riding the school bus. The record also establishes that Bryan retained counsel and sought medical treatment once he was financially able to do so, all to resume visitation. Considering Molly failed to prove abandonment or neglect, we agree with the district court that the evidence of Bryan's efforts to communicate with S.A.T., alone, was insufficient to support terminating Bryan's parental rights.[3]

*A court may not terminate parental rights based entirely on the defending parent's failure to deny specific allegations*

Molly also argues that because Bryan did not deny the petition's allegations as to token efforts, those allegations should be deemed admitted under NRCP 8(b)(6). We hesitate to apply the rules of civil procedure in this manner. Doing so could lead to the parent-child relationship being severed based on a technicality, given that under NRS 128.105(1)(b) only one ground of parental fault is needed to support termination of parental rights.

---

[3]Because NRS 128.109(1)(a) does not apply to private termination proceedings like these, Molly's argument that the statutory presumption of token efforts should apply to Bryan's detriment fails. *See In re L.R.S.*, 140 Nev., Adv. Op. 62, 555 P.3d at 1180 (explaining that "NRS 128.109 applies only when a child is placed outside his or her home pursuant to NRS Chapter 432B").

Parental rights "proceedings are civil in nature and are [therefore] governed by the Nevada Rules of Civil Procedure." NRS 128.090(2). NRCP 8(b)(6) provides that an allegation not denied in a responsive pleading will be deemed admitted. *Cf. Est. of LoMastro v. Am. Fam. Ins. Grp.*, 124 Nev. 1060, 1068, 195 P.3d 339, 345 (2008) ("Entry of default acts as an admission by the defending party of all material claims made in the complaint."). But "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." NRCP 8(b)(6).

Once a petition to terminate parental rights has been filed, NRS 128.060(1) directs the clerk to issue a notice to the defending party. The statute provides that the defending party must appear before the court "if that person desires to oppose the petition." NRS 128.060(1). NRS 128.090 also explains that the court must conduct a hearing on the petition. The statutes do not, however, require a defending party to file a response. Thus, because a responsive pleading is not required, NRCP 8(b)(6) explains that any allegations not denied are "considered denied or avoided," not that the allegations are admitted, as Molly urges. And NRS 128.090(2) requires that "the facts [be established] by clear and convincing evidence." Thus, a ground of parental fault may not be deemed admitted for failure to deny allegations in a response to the petition, especially where the court would be relying on that sole ground of parental fault to sever the parent-child relationship.

Moreover, because this court's "policy favoring a decision on the merits [is] heighten[ed] in domestic relations matters," we have cautioned that "terminating parental rights without a trial on the merits would be contrary to this court's objectives." *Price v. Dunn*, 106 Nev. 100, 105, 787 P.2d 785, 788 (1990), *overruled in part on other grounds by NC-DSH, Inc. v. Garner*, 125 Nev. 647, 651 n.3, 218 P.3d 853, 857 n.3 (2009); *see also*

*Bauwens v. Evans*, 109 Nev. 537, 539, 853 P.2d 121, 122 (1993) ("[G]iven that termination of parental rights constitutes a drastic and permanent severance of the parent-child relationship, we hold that the judicial policy favoring a decision on the merits heightens in matters involving the termination of parental rights."), *overruled on other grounds by Epstein v. Epstein*, 113 Nev. 1401, 950 P.2d 771 (1997). Accordingly, we conclude that Bryan's failure to address the token-efforts ground of parental fault in his opposition to the petition did not mean he admitted that ground of parental fault.[4]

*Molly's arguments regarding Bryan's compliance with the extended TPO are moot*

Finally, we decline to address Molly's argument that the district court erred by finding Bryan had complied with the mental health requirements of the extended TPO, such that Bryan should be permitted to seek visitation with S.A.T. That matter is moot. The plain terms of the extended TPO provided that it would expire either upon Bryan obtaining a psychological evaluation and appropriate counseling or one year from the date of issuance. Thus, because the extended TPO expired on July 18, 2017, whether Bryan complied with the TPO's psychological evaluation and counseling requirements is now moot. *See Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010) (discussing the mootness doctrine and explaining that an issue may be rendered moot by later events).

---

[4]Given our conclusion that Molly did not demonstrate any grounds of parental fault, we need not consider the parties' arguments as to whether terminating Bryan's parental rights would be in S.A.T.'s best interest. *See* NRS 128.105(1) (requiring both parental fault and a demonstration that the child's best interest is served by termination).

## CONCLUSION

Allowing severance of the parent-child relationship based only on a parent's token efforts to communicate with the child is disfavored in the context of a private termination action, particularly where the child is in a safe, loving, and otherwise stable home. Further, a party's failure to specifically oppose a parental-fault ground in the party's opposition to a petition to terminate parental rights does not mean the party admits that the parental-fault ground has been established by clear and convincing evidence. Considering the private termination action before us, we conclude the district court properly found that Molly had not met her burden to establish grounds of parental fault sufficient to warrant terminating Bryan's parental rights. Accordingly, we affirm the district court's order denying Molly's petition to terminate Bryan's parental rights.

_____, J.
Stiglich

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A